COUZENS WAREHOUSE &
DISTRIBUTORS, INC.,
Counter-defendant-Appellee,

v.

FRED OLSON MOTOR SERVICE CO.,
Counter-plaintiff-Appellant.

No. 76–1337.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 27, 1976.

Decided Nov. 15, 1976.

Daniel C. Sullivan, Chicago, Ill., for appellant.

William H. Towle, Chicago, Ill., for appellee.

Before FAIRCHILD and PELL, Circuit Judges, and WOLLENBERG, Senior District Judge *.

WOLLENBERG, Senior District Judge.

At issue here is the proper rate to be charged by a common carrier under the applicable tariffs for shipments by a company that acted as a freight forwarder in interstate commerce without the proper authority.

At the time this controversy arose, Fred Olson Motor Service (hereinafter, "Olson") was a common carrier by motor vehicle operating in interstate commerce pursuant to certificates of public convenience and

* Senior District Judge Albert C. Wollenberg of the United States District Court for the North- ern District of California is sitting by designation.

necessity issued by the Interstate Commerce Commission. It maintained tariffs governing the terms and conditions of its transportation service from Chicago to Milwaukee. Couzens Warehouse & Distributors (hereinafter, "Couzens") operated public warehouses in and around Chicago and utilized Olson's services to ship to Milwaukee goods stored in those warehouses by Couzens' customers.

The proceedings below were initiated by the filing of a complaint by Couzens alleging that under the applicable tariff Olson was required to return pallets belonging to Couzens and used in the transportation of goods shipped by Couzens or to reimburse Couzens for the pallets. Olson answered the complaint and brought a counterclaim. The counterclaim contained three causes of action seeking: (1) tariff freight charges for certain pallets returned by Olson to Couzens; (2) over $44,000 in additional charges arising from the recomputation of freight rates on several shipments Olson made for Couzens; and (3) damages to one of Olson's trailers.

After some preliminary procedures, the parties settled the matters raised in Couzens' complaint and in the third cause of action of Olson's counterclaim. Upon a stipulated set of facts, the District Court denied Olson's motion for partial summary judgment on the first and second causes of action in its counterclaim and, approximately one month later, granted summary judgment in favor of Couzens on those two causes of action and dismissed the case. Olson's appeal focuses on the selection of the appropriate freight rates in connection with the counterclaim's second cause of action.[1]

By the terms of the various tariffs applicable to Olson's services, the freight rates for truckload shipments were less than the freight rates for the comparable volume of shipments made in lots of less-than-truckload size. Truckload rates were normally available only if there was a single shipment from one shipper at one point of origin. This shipment had to be under one bill of lading to one consignee at one destination. However, Olson's tariffs also allowed individual deliveries of less-than-truckload size to be aggregated into truckload shipments and shipped to a number of destinations at either "stopoff" or "distribution" rates that were lower than the less-than-truckload rates. For the Couzens' shipments in question here to qualify for these stopoff and distribution rates, the tariffs required that a single shipment must be tendered with the shipping charges prepaid, that there be only one bill of lading, and that the shipment come from "one shipper" at one point of origin.

Couzens took advantage of the lower stopoff and distribution rates on several occasions by aggregating shipments of its customers' goods into truckload shipments and arranging for deliveries to various consignees in the Milwaukee area. In doing so, Couzens acted as a "freight forwarder" under the terms of Part IV of the Interstate Commerce Act. See 49 U.S.C. § 1002(a)(5).[2] However, Couzens did not have an Interstate Commerce Commission permit to op-

---

1. The issue of the freight charges for return of pallets that is contained in the counterclaim's first cause of action does not arise if Couzens was entitled to pay the rates it actually paid.

2. 49 U.S.C. § 1002(a)(5) provides that:
 (a) For the purposes of this chapter—
 (5) The term "freight forwarder" means any person which (otherwise than as a carrier subject to chapters 1, 8, or 12 of this title) holds itself out to the general public as a common carrier to transport or provide transportation of property, or any class or classes of property, for compensation, in interstate commerce, and which, in the ordinary and usual course of its undertaking, (A) assembles and consolidates or provides for assembling and consolidating shipments of such property, and performs or provides for the performance of break-bulk and distributing operations with respect to such consolidated shipments, and (B) assumes responsibility for the transportation of such property from point of receipt to point of destination, and (C) utilizes, for the whole or any part of the transportation of such shipments, the services of a carrier or carriers subject to chapters 1, 8, or 12 of this title.
 The parties stipulated that Couzens had acted as a freight forwarder within the meaning of the statute.

erate in interstate commerce as a freight forwarder as required by 49 U.S.C. § 1010, and for purposes of this case it will be assumed that Couzens' freight forwarding operations were therefore unlawful under 49 U.S.C. § 1021. Olson maintains that the lack of a permit precluded Couzens from gaining the benefits of the stopoff and distribution rates and that therefore Couzens should have been charged the less-than-truckload rates.

 Couzens met all the tariff requirements for entitlement to the stopoff and distribution rates if it was, in the language of the tariff, "one shipper." "Shipper" is not defined by the tariffs. Consequently, the term must take on its generally understood and accepted meaning, with due regard being given to its usage in the particular business involved. *Chicago, Burlington & Quincy R. Co. v. United States*, 221 F.2d 811, 812 (7th Cir. 1955); *Raymond City Coal & Transportation Corp. v. New York Cent. R. Co.*, 103 F.2d 56, 57 (6th Cir. 1939). Had Couzens been a licensed freight forwarder, it would be undisputed that it must be considered a shipper insofar as its relationship with Olson, a carrier, is concerned. *Chicago, Milwaukee, St. Paul & Pacific Railroad Co. v. Acme Fast Freight, Inc.*, 336 U.S. 465, 69 S.Ct. 692, 93 L.Ed. 817 (1949). The lack of an appropriate permit does not change the nature of Couzens' activities nor its relationship with Olson. In fact, forwarders were considered shippers insofar as their relationships with carriers were concerned long before forwarders came under the regulation of Part IV of the Interstate Commerce Act, and the Act did not alter this relationship. *Id.* at 476, 69 S.Ct. 692. Couzens must therefore be considered a "shipper" within the meaning of the applicable tariffs.[3]

Appellant claims that Couzens must be charged the less-than-truckload rates in or-

der to effectuate the purposes of the Interstate Commerce Act. Olson argues that the regulatory system that has evolved under the Act is designed to prevent even the possibility of rebates, preferences, or other forms of discrimination against shippers and that past Interstate Commerce Commission decisions show special attention must be paid in the area of stopoff and distribution rates to avoid these evils. However, in this case, the varieties of discrimination that Olson claims are possible when a freight forwarder operates without the necessary permit would not be eliminated by the remedy Olson seeks.

The first type of discrimination Olson claims is possible in this situation is between various customers of Couzens. Because of the lack of Interstate Commerce Commission regulation, Olson hypothesizes that Couzens could have charged its customers different rates for the same service when it aggregated smaller shipments into truckload size shipments. Requiring Couzens to pay a higher rate for its shipments would not eliminate this possibility because the lack of regulatory supervision and not the ultimate freight charge to Couzens is the element that would permit Couzens to prefer some of its customers over others. In the instant case, had Couzens originally been charged the rate now sought by Olson, Couzens could have made up the difference by charging its customers proportionately higher fees without eliminating any preferences that may have been granted.[4]

The second type of discrimination that Olson claims is possible in this situation is between a company that uses Couzens' aggregation services to receive a truckload rate on its own less-than-truckload shipment and a company that does not use Couzens' services and therefore must pay the higher less-than-truckload rates for the same size shipment. There is, however, no

---

**3.** It follows that "one shipment" was tendered by "one shipper" although the goods were owned by various companies. Cf. *Interstate Commerce Commission v. Delaware, Lackawanna & Western Railroad Company*, 220 U.S. 235, 31 S.Ct. 392, 55 L.Ed. 448 (1911).

**4.** The original hypothesized discriminations between Couzens' customers would still remain even if it is assumed that Couzens could not pass on to them any judgment it would have to pay in this case to Olson.

serious possibility that this situation will even arise, for the company that does not use Couzens' services is always free to use the services of another freight forwarder, and one which is subject to Interstate Commerce Commission regulation, and gain the advantage of aggregating its shipments with those of other companies into truckload-size shipments.

We of course do not condone any violations of the law that may have been committed by Couzens. However, the efficacy of the possible sanctions available under the present law to the government or to Couzens' customers is not an issue in this case. As far as the carrier is concerned, it has been paid the proper rate for the actual services that it performed.

AFFIRMED.