**MEDITERRANEAN MARINE LINES, INC. and American Export Lines, Inc., Plaintiffs,**

v.

**JOHN T. CLARK & SON OF MARYLAND, INC. and Cincinnati Incorporated and The H. J. Hosea & Sons Company, Defendants.**

**CINCINNATI INCORPORATED, Cross-Plaintiff,**

v.

**JOHN T. CLARK & SON OF MARYLAND, INC. and The H. J. Hosea & Sons Company, Cross-Defendants.**

**The H. J. HOSEA & SONS COMPANY, Cross-Plaintiff,**

v.

**CINCINNATI INCORPORATED and John T. Clark & Son of Maryland, Inc., Cross-Defendants.**

**JOHN T. CLARK & SON OF MARYLAND, INC., Cross-Plaintiff,**

v.

**CINCINNATI INCORPORATED and The H. J. Hosea & Sons Company, Cross-Defendants.**

Civ. No. H–77–411.

United States District Court, D. Maryland.

March 10, 1980.

Kieron F. Quinn, John M. Kinsey and Ober, Grimes & Shriver, Baltimore, Md., for plaintiffs.

R. Roger Drechsler, J. Paul Mullen and Lord, Whip, Coughlan & Green, Baltimore, Md., for defendant John T. Clark & Son of Maryland, Inc.

James W. Bartlett, III and Semmes, Bowen & Semmes, and Mark C. Treanor and Miles & Stockbridge, Baltimore, Md., for defendant Cincinnati Inc.

E. Dale Adkins, III and Anderson, Coe & King, Baltimore, Md., for defendant The H. J. Hosea & Sons Co.

## MEMORANDUM AND ORDER

ALEXANDER HARVEY, II, District Judge:

Presently pending in this action are a motion for partial summary judgment filed by defendant John T. Clark & Son of Maryland, Inc. (hereinafter "Clark") and a motion for partial summary judgment filed by defendant The H. J. Hosea & Sons Company (hereinafter "Hosea"). The parties have filed briefs in support of and in opposition to the pending motions, and oral argument has been heard in open court. For the reasons stated herein, Clark's motion will be granted and Hosea's motion will be denied.

### I

#### The Facts

This case involves an admiralty and maritime claim arising out of the alleged dropping of a 45,000-pound, metal-working shear while it was being loaded onto the SS YOUNG AMERICA, at the Dundalk Marine Terminal in Baltimore, Maryland. Plaintiffs, Mediterranean Marine Lines, Inc. (hereinafter "Mediterranean Marine") and American Export Lines, Inc. (hereinafter "American Export") are respectively the owner of and the operator of the SS YOUNG AMERICA, which sustained damages during the loading accident. Named as defendants are the stevedoring company, Clark, which did the loading; the manufacturer of the shear, Cincinnati Incorporated (hereinafter "Cincinnati"); and the freight forwarder and packager of the shear, Hosea.

Cincinnati entered into a contract with Israeleasing Equipment Leasing Company, Ltd., of Tel Aviv, Israel, for the manufacture of a 45,000-pound, metal-working shear. Cincinnati manufactured the metal shear, attached it to two wooden runners and delivered it to Hosea so that it might be prepared for export to Israel. Hosea picked up the metal shear at Cincinnati's plant and transported it to Hosea's facility at Newport, Kentucky. There, Hosea packaged the shear for export and ocean shipment. Hosea placed the shear upon a 17 × 18-foot wooden skid, wrapped it in a double layer of black polyethylene and covered it with a tarpaulin. Hosea then shipped the shear by truck to the Dundalk Marine Terminal in the Port of Baltimore.

Upon arrival at the Dundalk Marine Terminal, the shear was still covered with the polyethylene and tarpaulin. The shear was intended to remain covered in this manner until arrival at its destination in Israel. However, between the time of the shear's arrival at the Terminal on March 12, 1976, and the time of its loading on board ship several weeks later on April 1, 1976, the polyethylene and tarpaulin were removed, presumably during a severe thunderstorm or tornado. Consequently, while the shear was being loaded aboard the YOUNG AMERICA, it was uncovered.

On April 1, 1976, Clark moved the shear from storage to a position beside the YOUNG AMERICA. The shear was rigged with slings and appurtenances and the stevedores then proceeded to lift it aboard the vessel, using a shore-based crane. As the shear was being lifted, the skid to which it was attached broke, and the shear then fell onto the double bottom tank top of the No. 6 port container of the vessel, severely damaging the vessel and destroying the shear.

Mediterranean Marine and American Export, as owner and operator of the YOUNG

AMERICA, filed this action in this Court, seeking to recover $125,000 for the damages allegedly sustained, including the cost of repairs to the YOUNG AMERICA, losses due to detention and other costs and expenses incurred. The complaint named as defendants Clark (the stevedore), Cincinnati (the shipper) and Hosea (the freight forwarder). Cincinnati filed a cross-claim against both Clark and Hosea, seeking to recover damages for the loss of the shear and also seeking recovery against these two cross-defendants in the event of a judgment recovered by the plaintiffs, under theories of indemnity and contribution. Clark filed cross-claims against Cincinnati and Hosea, and Hosea cross-claimed against Clark and Cincinnati under similar theories of indemnity and contribution.

The pending motions for partial summary judgment relate only to some of these cross-claims. Clark's motion seeks partial summary judgment in its favor with respect to the two cross-claims of Cincinnati and Hosea. Clark contends that under the provisions of the bill of lading and of the Carriage of Goods By Sea Act, 46 U.S.C. § 1300 et seq. (hereinafter "COGSA"), its liability to Cincinnati for damages to the shear must be limited to $500. Clark further contends that its potential liability on Cincinnati's and Hosea's cross-claims for indemnity and contribution should similarly be limited to $500.

Both Cincinnati and Hosea have filed oppositions to Clark's motion. In the alternative, Hosea has itself filed a motion for partial summary judgment. Hosea contends in its motion that if Clark is allowed to limit its liability, then Hosea should likewise be allowed to limit its liability under its cross-claims to $500 under the terms of the bill of lading and COGSA.

## II

### *The Issue*

The pending motions present the question whether under the facts of this case Clark, the stevedore, is entitled to the $500 limitation of liability contained in COGSA. § 1304(5) provides in pertinent part as follows:

(5) Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

■ In *Herd and Company v. Krawill Machinery Corp.*, 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959), the Supreme Court held that this provision limited the liability of the carrier but not that of the stevedore if the latter were not a party to nor beneficiary of the contract of carriage between the shipper and the carrier. *Id.* at 308, 79 S.Ct. at 772. However, a stevedore may be entitled to the benefit of COGSA's $500 limitation of liability if the bill of lading covers the stevedore. *Carle & Montanari, Inc. v. American Export Isbrandtsen Lines, Inc.*, 275 F.Supp. 76, 78 (S.D.N.Y.), aff'd 386 F.2d 839 (2d Cir. 1967), *cert. denied*, 390 U.S. 1013, 88 S.Ct. 1263, 20 L.Ed.2d 162 (1968).

What must be determined here is whether there was an outstanding bill of lading in this case which extended the COGSA $500 limitation of liability to Clark. If so, the further question presented is whether the metal shear in this case, as mounted on the wooden skid, constituted a "package" under COGSA.

This action was filed almost three years ago and the parties have meanwhile engaged in extensive discovery. As disclosed by the discovery to date, the facts essential to the issues presented by the pending motions are not in dispute. Since there is no genuine issue as to any material fact, this Court has concluded that Clark is entitled to partial summary judgment as a matter of law under Rule 56, F.R.Civ.P. However, Hosea's motion must be denied as a matter of law.

## III

### The Stevedore's Entitlement to Limitation of Liability

Clark bases its claim for limitation of liability upon Paragraphs 1 and 16 of American Export's bill of lading. The provisions in question state in pertinent part:

1. This bill of lading shall have effect subject to the provisions of the Carriage of Goods By Sea Act of the United States of America, approved April 16, 1936, which shall be deemed to be incorporated herein, * * * The provisions stated in said Act (except as otherwise specifically provided herein) shall govern before the shipment is loaded on and after its discharge from the vessel and throughout the entire time the goods are in the exclusive custody of the carrier until made ready for delivery * * *

(a) The carrier shall be entitled to the benefit of, and right to, all limitations of, or exemption from, liability authorized by any provisions of Sections 4281 to 4288, inclusive, of the Revised Statutes of the United States and amendments thereto and of any other provisions of the laws of the United States or of any other country whose laws shall apply. The terms of this bill of lading constitute the contract of carriage, which is between the Shipper, Consignee and owner of the goods, and the owner or demise charterer of the vessel designated to carry the shipment. It is understood and agreed that other than the said shipowner or demise charterer, no person, firm or corporation or other legal entity whatsoever (including the master, officers and crew of the vessel, or agents, employees, representatives and all terminal operators, stevedores, watchmen and other independent contractors whatsoever) is, or shall be, deemed to be liable with respect to the goods as carrier, bailee or otherwise howsoever, in contract or in tort. If, however, it shall be adjudged that any other than said shipowner or demise charterer is carrier or bailee of the goods or under any responsibility with respect thereto, all limitations of and exonerations from liability provided by law or by the terms hereof shall be available to such other.

In contracting for the foregoing exemptions, limitations and exonerations from liability, the carrier is acting as agent and trustee for the other above mentioned. * * *

* * * * * *

16. In case of any loss or damage to or in connection with goods exceeding in actual value the equivalent of $500 lawful money of the United States, per package, or in the case of goods not shipped in packages, per shipping unit, the value of the goods shall be deemed to be $500 per package or per shipping unit. The carrier's liability, if any, shall be determined on the basis of a value of $500 per package or per shipping unit or pro rata in case of partial loss or damage, unless the nature of the goods and a valuation higher than $500 per package or shipping unit shall have been declared in writing by the shipper upon delivery to the carrier and inserted in this bill of lading and extra charge paid. * * *

It is apparent here that the carrier and the stevedore intended that the stevedore should be entitled to the benefit of the limitation of liability provision in the bill of lading. In the stevedoring contract between American Export and Clark, there is the following provision:

### LIABILITY

* * * * * *

(2) With respect to claims for loss or damage to cargo or baggage, the liability of the Contractor shall be limited by the vessel Owners bill of lading and/or baggage ticket clauses. It being the intention of the parties herein that the Contractor, where such limitations are valid, is not liable to cargo or other interests to any greater extent than is the vessels interests. The carrier agrees it will not change such provisions as now exist under the terms of paragraph 1 and 16 without prior written notice to the Contractor. Further, the carrier agrees to use its best efforts to give the Contractor notice of any Ad Valorem cargo prior to its arrival at the terminal.

There is no evidence in the record here that Cincinnati, the shipper, did not intend to be bound by the provisions of the carrier's bill of lading. Under these circumstances, the Court concludes that Clark, the stevedore, is entitled to the limitation of liability claimed. Reading the third and fourth sentences of Paragraph 1(a) together, it is clear that the bill of lading seeks to exclude stevedores from liability in the third sentence while providing in the fourth sentence that if the stevedore is found liable, its liability is limited to $500 as provided in Paragraph 16. *See Carle & Montanari, Inc. v. American Export Isbrandtsen Lines, Inc., supra* at 78.

Cincinnati and Hosea first argue that the provisions of the bill of lading are not applicable because the bill of lading was never issued. The record here discloses that a bill of lading had been prepared but had not been signed and issued at the time of the occurrence because the accident happened before the shear was finally loaded on board the vessel. Clark contends, however, that the dock receipt, which was issued by plaintiff American Export to Cincinnati on March 12, 1976, incorporated the provisions of the bill of lading. The dock receipt provided:

> Received the above-described merchandize for shipment as indicated hereon. Subject to all conditions of the undersigned's usual form of bill of lading. Copies of the undersigned's usual form of bill of lading may be obtained on application to any office of American Export Lines, Inc. or to the master or to the agent of the master at the port of shipment or the port of discharge.

American Export's bill of lading in this case was No. 232509, dated March 31, 1976. The dock receipt included the number "232509" on its face and named Cincinnati as the "Shipper/exporter."

■ This Court finds and concludes that the dock receipt here incorporated the terms of the bill of lading. Accordingly, the provisions of the bill of lading became part of the maritime contract between the parties upon issuance of the dock receipt. *Eastman Kodak Co. v. Transmariner*, 1975

A.M.C. 123, 125–26 (S.D.N.Y.1974); *Berkshire Knitting Mills v. Moore-McCormack Lines, Inc.*, 265 F.Supp. 846, 848 (S.D.N.Y. 1965).

■ Both Cincinnati and Hosea present a host of arguments in support of their position that Clark may not limit its liability in this case. Cincinnati first contends that there is an issue of fact as to whether Cincinnati agreed to the incorporation of the terms of the bill of lading in the dock receipt. The record here does not support this contention. In surrendering the shear through its agent Hosea in return for the dock receipt, Cincinnati became bound by the provisions of the dock receipt which clearly incorporated the terms of the bill of lading. There is nothing in the record in this case to indicate that Cincinnati or its agents objected to or were unaware of these provisions.

A very recent opinion of the Fourth Circuit is instructive in this connection. In *Commonwealth Petrochemicals, Inc. v. SS Puerto Rico*, 607 F.2d 322 (4th Cir. 1979), the Court was presented with a carrier's claim for limitation of liability under the single package provision of COGSA as incorporated into a bill of lading. The shippers had argued that they should not be bound by provisions of a clause in a long form bill of lading when only the short form had actually been given to the shipper. The Fourth Circuit held that the shipper was bound by the provisions in question, noting that "The long form must be posted in certain places and be available upon request" * * *, a "practice [which] has received judicial approval, e. g., *Zifferer v. Atlantic Lines, Ltd.*, 278 F.Supp. 736 (D.P. R.1968), and seems to be customary in the industry." *Id.* at 327. Noting that several courts had refused to give effect to provisions included in the long form when the provisions were such that the shipper could not be expected to have anticipated their existence, the Fourth Circuit held that the facts in the *Commonwealth Petrochemicals* case did not fall within this qualification. *Id.* at 327.

The result is the same under the facts in this case. The dock receipt here incorporated "all" conditions of American Export's "usual form" of bill of lading, a copy of which was available at American Export's office or on application to the master or ship's agent. The provisions of the bill of lading relied upon by Clark in this case are standard terms which have been included in bills of lading and construed by the courts on numerous occasions. *See Carle & Montanari, Inc. v. American Export Isbrandtsen Lines, Inc., supra,* 275 F.Supp. at 77–78; *Berkshire Knitting Mills v. Moore-McCormack Lines, Inc., supra,* 265 F.Supp. at 847.

In support of its position, Cincinnati relies upon *Scott & Williams, Inc. v. Pittston Stevedoring Corp.,* 422 F.Supp. 40 (S.D.N.Y. 1976). In that case, Judge Weinfeld stated that in some instances a dock receipt may incorporate the provisions of the bill of lading. *Supra* at 42. Judge Weinfeld found, however, that the carrier in that case used two different bills of lading and that it was not clear from the record which bill of lading the parties intended to incorporate into the dock receipt. Accordingly, Judge Weinfeld concluded that the attempted incorporation was invalid.

The pending case is clearly distinguishable from the *Pittston Stevedoring Corp.* case. Here, American Export used only one standard form of bill of lading. On the record in this case, there is no uncertainty concerning the provisions of the bill of lading which were incorporated into the dock receipt.

Hosea contends that it is not bound by the bill of lading because it is not the shipper and therefore is not a party to the bill of lading. This Court would disagree. Hosea is a licensed freight forwarder which acted on behalf of Cincinnati, the shipper. Hosea prepared the metal shear for shipment and delivered it to the Dundalk Marine Terminal for loading. Under these circumstances, it is clear that Hosea acted as agent for Cincinnati and therefore must be considered a "shipper" under the bill of lading. *See Couzens Warehouse & Distributors, Inc. v. Fred Olson Motor Service,* 544 F.2d 919, 921 (7th Cir. 1976). As the Court

stated in that case, a licensed freight forwarder must be considered a shipper insofar as its relationship with a carrier is concerned. *Id.* at 921.

Hosea's reliance on *Stein Hall & Co., Inc. v. SS CONCORDIA VIKING,* 494 F.2d 287 (2d Cir. 1974), is misplaced. That decision held that a bill of lading could not bind a *stevedore* without its consent. Hosea, however, acted as freight forwarder for and agent of the shipper, performing duties far different from those undertaken by a stevedore performing services as an independent contractor for the carrier. This Court concludes that Hosea, as well as Cincinnati, is bound by the limitation of liability provisions of the bill of lading.

Hosea also argues that the language of the bill of lading is too ambiguous to extend the limitation of liability to Clark. As Hosea points out, Paragraph 16 of the bill of lading applies only to plaintiffs. By its terms, Paragraph 16 limits "the carrier's liability" to $500 per package or, if the goods are not shipped in packages, to $500 per shipping unit, unless the nature of the goods and a valuation higher than $500 per package or shipping unit shall have been declared in writing, inserted in the bill of lading and an extra charge paid. Paragraph 2 of the bill of lading defines "carrier" as "the carrier named on the front side hereof, the vessel, her owner, demise charterer, and any substituted ocean carrier whether the owner or charterer shall be acting as carrier or bailee."

However, Clark's entitlement to a limitation of liability arises not under Paragraph 2 but under Paragraph 1(a) of the bill of lading, the so-called "Himalaya clause." Recognizing Clark's position, Hosea contends that this clause should not be given effect because it is ambiguous and contradictory. It is argued initially that the third sentence is void because it completely exonerates from liability anyone who falls within its ambit. Next, it is urged that the fourth sentence is ambiguous because it extends the limitation of liability to "any other than said shipowner," and because the term "any other" cannot refer to the par-

ties enumerated in the third sentence since the third sentence is void. This Court finds no merit to these arguments.

■ Even were this Court to conclude that no legal effect could be given to the third sentence of Paragraph 1(a), that sentence would still retain its grammatical significance. The definite pronoun "other" in the fourth sentence relates grammatically to the parties enumerated in the third sentence, irrespective of the legal validity of the third sentence. Construing these two sentences together, this Court concludes that the bill of lading extends the limitation of liability to stevedores. The very same arguments were considered and rejected in *Carle & Montanari, Inc. v. American Export Isbrandtsen Lines, Inc., supra.* In that case, Judge Bonsal had before him almost identical provisions of a bill of lading as are involved in this case. After considering arguments similar to those advanced in this case, Judge Bonsal ruled that the stevedore was entitled to limit its liability to $500 under the provisions of the bill of lading. The Second Circuit affirmed that ruling. 386 F.2d 839. In *Tessler Brothers, Ltd. v. Italpacific Line,* 494 F.2d 438, 445–446 (9th Cir. 1974), the Ninth Circuit reached the same result in a case involving similar provisions of a bill of lading.

Hosea and Cincinnati also contend that the limitation of liability in question does not apply to defendant Clark because the accident occurred prior to the period of carriage, and therefore that COGSA does not apply. But COGSA permits the parties to a bill of lading to extend the time of the period of carriage to include loading and unloading. 46 U.S.C. § 1307 states:

> Nothing contained in this Act shall prevent a carrier or a shipper from entering into any agreement, stipulation, condition, reservation, or exemption as to the responsibility and liability of the carrier or the ship for the loss or damage to or in connection with the custody and care and handling of goods prior to the loading on and subsequent to the discharge from the ship on which the goods are carried by sea.

Paragraph 1 of the bill of lading in this case provides that COGSA "shall govern before the shipment is loaded on and after it is discharged from the vessel and throughout the entire time the goods are in the exclusive custody of the carrier until made ready for delivery."

■ Hosea and Cincinnati contend that Clark would not be entitled to rely on these provisions. They assert that although Paragraph 1 of the bill of lading discloses an intention to extend the period of carriage to the time of loading, it does so only with respect to the carrier but not with respect to the stevedore. This interpretation of the language in question is incorrect. A careful reading of Paragraph 1 of the bill of lading indicates that the parties intended to extend the period of carriage in three ways. COGSA was to apply (1) before the shipment was loaded on the vessel, (2) after it was discharged, and (3) at all other times during which the goods were in the exclusive custody of the carrier. The first and second extensions must necessarily apply to a party like a stevedore, while only the third category would apply solely to the carrier. For these reasons, this Court finds and concludes that COGSA's limitation of liability is applicable to the facts of this case and that Clark is entitled to limit its liability accordingly.

### IV

#### The Single Package Doctrine

The final issue raised by Hosea and Cincinnati is whether the metal shear constituted a single "package" as that term is defined by COGSA. Clark contends that the shear was a "package" entitled to the protections of the Act, while Cincinnati and Hosea contend that it was not. After reviewing the undisputed facts in this case and the relevant authorities, this Court concludes that the metal shear did indeed constitute a COGSA "package."

Whether or not a shipment of cargo under modern day conditions constitutes a package within the 1936 language of COGSA has been the subject of continuing. liti-

**1338**

gation in this and other Circuits. Judge Miller of this Court suggested the application of a four-part test for resolving this question. *See Commonwealth Petrochemicals, Inc. v. SS Puerto Rico*, 455 F.Supp. 310, 321 (D.Md.1978), *rev'd on other grounds*, 607 F.2d 322 (4th Cir. 1979). More recently, Judge Clarke, of the Eastern District of Virginia, formulated a test which involved consideration of twelve criteria. *See Complaint of Norfolk, Baltimore & Carolina Line, Inc.*, 478 F.Supp. 383 (E.D.Va. 1979). In its opinion in *Commonwealth Petrochemicals*, the Fourth Circuit did not specifically address this issue because of language in the bill of lading in that case which led it to conclude that the transformer involved there was indeed a COGSA package. 607 F.2d at 327–28.

As both *Commonwealth Petrochemicals* and *Norfolk, Baltimore & Carolina Line* point out, COGSA, like its predecessor, the Harter Act, had as its principal purpose the elimination of adhesion contracts foisted upon the shipper as a result of the carrier's superior bargaining strength. Section 1304(5) established the figure of $500 as a reasonable amount below which the carrier should not be permitted to limit its liability. Although the $500 figure is completely unrealistic today, courts in this and other Circuits have continued to limit the liability involved to that amount in cases where § 1304(5) was applicable. So long as the $500 amount is applied by the Courts, the shipper, the carrier and also the stevedore in a case such as this one can understand their risks and can protect their interests where a particular unit of cargo is involved. If the $500 figure is to be increased, Congress and not the courts should make the change. 478 F.Supp. at 389.

It is apparent from a review of the authorities cited by the parties that the question of what is a package under § 1304(5) has arisen more often in the Second Circuit than in any other. In *Aluminios Pozuelo Ltd. v. SS NAVIGATOR*, 407 F.2d 152 (2d Cir. 1968), the Second Circuit held that a toggle press bolted to a wooden skid was a package under COGSA. The Court defined "package" as "a class of cargo, irrespective of size, shape or weight, to which some packaging preparation for transportation has been made which facilitates handling, but which does not necessarily conceal or completely enclose the goods." *See also Middle East Agency v. THE JOHN B. WATERMAN*, 86 F.Supp. 487 (S.D.N.Y. 1949). Other decisions from the Second Circuit to the same effect include *Standard Electrica S.A. v. Hamburg Sudamerikanische*, 375 F.2d 943 (2d Cir. 1967) and *Companhia Hidro Electrica v. SS LOIDE HONDURAS*, 368 F.Supp. 289 (S.D.N.Y.1974).

In *Hartford Fire Ins. Co. v. Pacific Far East Line, Inc.*, 491 F.2d 960 (9th Cir. 1974), the Ninth Circuit disapproved of this test. In that case, the Court concluded that a transformer mounted on skids was not a COGSA package.

Cincinnati and Hosea rely in this case on Judge Miller's definition of the term "package" in *Commonwealth Petrochemicals, Inc. v. SS PUERTO RICO*, supra. After a review of the legislative history of the Act, Judge Miller noted that the statute limited the carrier's liability for packaged goods because "the carrier * * * has no direct way of knowing the actual or potential value of the goods contained in the package or their condition when placed in the package." 455 F.Supp. at 318. Judge Miller concluded that a COGSA package must possess the following four elements:

(1) In the course of preparation for transportation or handling

(2) by the shipper or shipper's agent (or a predecessor of the shipper)

(3) the goods are partially or completely covered or contained by the time delivered or entrusted to the custody of the carrier

(4) in such a way as to preclude facile identification of the exact character of the goods contained therein or of their condition or quantity. *Supra* at 321.

In formulating this test, Judge Miller declined to follow the principles of the Second Circuit COGSA cases and, in particular, rejected the reasoning of *Pannell v. United States Lines Company*, 263 F.2d 497 (2d Cir. 1959), *cert. denied*, 359 U.S. 1013, 79 S.Ct. 1151, 3 L.Ed.2d 1037 (1959). In reversing

the judgment entered by Judge Miller in *Commonwealth Petrochemicals, Inc.,* the Fourth Circuit expressly followed the reasoning of the Second Circuit in *Pannell* and cited with approval a number of other Second Circuit decisions.

■ Although this Court is satisfied that the Fourth Circuit would find the Second Circuit cases instructive in a case such as this one, it is not necessary here to decide whether the Second Circuit test in *Aluminios Pozuelo* should be applied or whether Judge Miller's test in *Commonwealth Petrochemicals* is controlling. Under either test, this Court concludes that the shear involved in the accident was a single package under § 1304(5). Certainly, if the toggle press bolted to a wooden skid in *Aluminios Pozuelo* was a COGSA package, then the shear in this case, as mounted on a wooden skid, was likewise a COGSA package. Even if there had been no polyethylene covering or tarpaulin on the shear when it reached the Dundalk Marine Terminal, the unit was "a class of cargo * * * to which some packaging preparation for transportation has been made which facilitates handling, but which does not necessarily conceal or completely enclose the goods." 407 F.2d at 155. Furthermore, the cargo was described as a single package in both the dock receipt and the bill of lading. In the box entitled "No. of cont. or other pkgs." is the number "1". As the Fourth Circuit pointed out in its opinion in *Commonwealth Petrochemicals,* "[T]he key to determining what is a package or unit for purposes of limitation is the intention of the parties, particularly as declared on the bill of lading * * *" 607 F.2d at 327, quoting from W. Tetley, *Marine Cargo Claims,* 435 (2d Ed.1978).

Moreover, the facts here indicate that all four of the elements mentioned by Judge Miller in *Commonwealth Petrochemicals* are present in this case. When the shear was delivered to the carrier, it had been wrapped by Hosea, the shipper's agent, in the course of preparation for transportation and handling, in two layers of dark polyethylene and covered with a tarpaulin. This covering of the shear precluded the facile identification by the carrier of the exact character of the shear or of its condition.

Cincinnati and Hosea contend that the test formulated by Judge Miller in *Commonwealth Petrochemicals* was not satisfied in this case. They point out that the shear was not wrapped in polyethylene and covered by a tarpaulin when it was being loaded on the vessel by Clark. Therefore, they assert, both the carrier and the stevedore could determine the character of the goods and their condition at the time of the accident.

But the critical time here is when the goods were delivered to or entrusted to the custody of the carrier. On that date, namely March 12, 1976, the shear was completely covered by the polyethylene and the tarpaulin. The dock receipt itself is dated March 12, 1976 and the terms and conditions of the bill of lading, including the applicable provisions of COGSA, became operative on that date. Whether or not at a later date the goods became uncovered is not material in determining whether they constituted a COGSA package when delivered to the carrier. As disclosed by depositions taken in this case, the polyethylene wrapper and the tarpaulin had been intended by Hosea to remain in place covering the shear until it reached its final destination. The contractual rights and obligations of the parties became fixed on March 12, 1976 when the dock receipt was issued and were not changed by the fortuitous events which occurred before the actual loading operations began.

The result would be the same under *Hartford Fire Insurance Co. v. Pacific Far East Line, Inc., supra,* even if this Court were to agree with the reasoning of the Ninth Circuit in that case. The electrical transformer there was mounted upon a wooden skid with no protective covering. The Ninth Circuit held that the shipper had not created a package "by simply attaching the transformer to a wooden skid." *Supra* at 965. In this case, much more was done, inasmuch as not only was the metal shear attached to a wooden skid, but it was also completely covered with polyethylene and a tarpaulin.

The test enunciated by Judge Clarke in the *Complaint of Norfolk, Baltimore & Car-*

*olina Line, Inc., supra*, was designed to be applied primarily in a case involving goods shipped inside a container. Nevertheless, were the applicable portions of Judge Clarke's test to be considered in this case, the result would be the same. In particular, the facts here indicate that the parties treated the shear as a single unit throughout their dealings and in the contractual documents themselves.

For these reasons, this Court will grant Clark's motion for partial summary judgment. The Pretrial Order in this case should provide that Clark's liability on the cross-claims is limited to $500.

### V

### *The Freight Forwarder's Entitlement to Limitation of Liability*

In its alternative motion for summary judgment, Hosea contends that the bill of lading extends to it the same limitation of liability extended to Clark. A close reading of the language in question in the light of the facts of this case convinces this Court that there is no merit to this contention.

Paragraph 1(a) of the bill of lading extends the limitation of liability to "the Master, officers, and crew of the vessel, all agents, employees, representatives, and all terminal operators, stevedores, watchmen, and other independent contractors whatsoever." Construing this provision strictly, *Herd v. Krawill Machinery Corp., supra* at 305, this Court concludes that Hosea is not entitled to the limitation of liability in question.

The parties enumerated in Paragraph 1(a) all have some direct relationship with and contact with the carrier. Thus, the "independent contractors" referred to in the bill of lading would be any contractors, which like the stevedore Clark, contracted to perform services for the carrier during the period of time covered by the bill of lading. Hosea performed services for the shipper under a contract with the shipper. The only contact Hosea had with the carrier resulted from its delivery of the goods to the custody of the carrier. Any fault on the part of Hosea occurred before the period covered by the bill of lading, which did not take effect until the goods arrived at the Dundalk Marine Terminal on March 12, 1976.

■ Although COGSA would be controlling before the shipment was *loaded* on the vessel, it would not pertain to events occurring before the goods were *delivered* to the carrier. It could hardly be assumed under the facts here that the parties intended to extend the limitation of liability to acts of an independent contractor occurring long before the goods were delivered to the carrier. Hosea has cited no cases which hold that the language in question covers a freight forwarder which had handled the goods prior to their arrival at dockside, and this Court concludes that the term "independent contractors" of Paragraph 1(a) does not include a freight forwarder like Hosea. Accordingly, Hosea's motion for partial summary judgment will be denied.

For the reasons stated, it is this 10th day of March, 1980, by the United States District Court for the District of Maryland,

ORDERED:

1. That the motion for partial summary judgment of defendant John T. Clark & Son of Maryland, Inc. be and the same is hereby granted; and

2. That the motion for partial summary judgment of defendant The H. J. Hosea & Sons Company be and the same is hereby denied.