# B. ELLIOTT (CANADA) LTD.
### v.
## JOHN T. CLARK & SON OF MARYLAND, INC.

Civ. No. Y–81–2088.

United States District Court,
D. Maryland.

July 13, 1982.

---

**19.** See note 1 *supra.*

William C. Stifler, III, Christopher F. Drummond, Baltimore, Md., for plaintiff.

R. Roger Drechsler, J. Paul Mullen, H. John Bremermann, III, Baltimore, Md., for defendant.

## MEMORANDUM OPINION AND ORDER

JOSEPH H. YOUNG, District Judge.

Plaintiff, B. Elliott (Canada) Ltd. ("Elliott") has brought this action against defendant John T. Clark & Son of Maryland, Inc. ("Clark") for damage to cargo allegedly incurred while in the custody of Clark following its discharge from the vessel, CV LIGHTNING. Clark filed a motion for summary judgment or, in the alternative, for partial summary judgment on April 15, 1982, claiming that it is entitled to the benefit of the limitations of liability under the U. S. Carriage of Goods by Sea Act (COGSA) (46 U.S.C. § 1300 *et seq.*), as conferred by certain provisions of the bill of lading issued by the carrier, Farrell Lines, Inc. ("Farrell").

## FACTS

The essential facts material to the questions at issue are not in dispute. Elliott, a Canadian corporation, was the consignee of a gear hobber shipped in two containers from Hamburg, West Germany aboard the CV LIGHTNING, a vessel owned by Farrell, which arrived at the Dundalk Marine Terminal on February 10, 1980. Upon arrival, Clark, pursuant to its Stevedore Contract with Farrell, unloaded the containers from the vessel. One of the containers, ITLU 745034, was placed on a chassis and stored in a container yard owned by Farrell.

On the following day, John Kowaleviocz, a yard hustler employed by Clark, moved Container ITLU 745034 to Shed Number 4, a building leased by Farrell and operated by Clark, for preparation of the cargo for delivery to the overland trucker. As Kowaleviocz entered Shed Number 4, the container tipped over causing damage to the contents. Although the facts conflict as to the precise date of delivery to the overland trucker, it is clear from the pleadings filed that an overland trucker received delivery of the container on or before February 28, 1980. This action was filed August 19, 1981.

## DISCUSSION

### I. The Applicability of COGSA to Clark

Clark asserts that its liability is limited under the terms of the bill of lading[1]

---

[1]. The pertinent sections of the bill of lading relative to this contention are set out below:

1. This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States of America (hereinafter referred to as COGSA), approved April 16, 1936, which shall be incorporated herein, and nothing contained herein shall be deemed a surrender by the Carrier of any of its rights or immunities or

and COGSA[2]. Certain limitations of liability under COGSA may be extended to third-party beneficiaries, even though COGSA by its own terms is applicable strictly to carriers. In *Herd and Company v. Krawill Machinery Corp.*, 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959), the Supreme Court held that the limitation of liability provisions of the bill of lading, while applicable to the carrier, could not be extended to the stevedore claiming its protection, in the absence of clear and unambiguous language in the bill of lading providing for such an extension. Since the *Herd* decision, COGSA limitations of liability have been extended to stevedores[3] and terminal operators[4] by vir-

limitations or an increase of its responsibilities or liabilities under COGSA. COGSA, except as specifically provided herein, shall govern before the shipment is loaded on and after it is discharged from the carrying vessel and throughout the entire time the goods are in the custody of the Carrier until made ready for delivery.

\* \* \* \* \* \*

1(a) The Carrier shall be entitled to the full benefit of, and right to, all limitations or exemption from liability authorized by any provisions of Sections 4281 to 4288 inclusive of the Revised Statutes of the United States and amendments thereto and of any other provisions of the laws of the United States or of any other country whose laws shall apply. The terms of this bill of lading constitute the contract of carriage, which is between the shipper, consignee and authorized owner of the goods, and the Carrier, owner or demise charterer of the vessel designated to carry the shipment. It is understood and agreed that other than the Carrier, owner or demise charterer, no person, firm or corporation or other legal entity whatsoever (including the Master, officers and crew of the vessel, all agents, employees, representatives, and all terminal operators, stevedores, watchmen and other independent contractors whatsoever) is, or shall be deemed liable with respect to the goods as carriers, bailee or otherwise howsoever, in contract or in tort. If however, it shall be adjudged that any other than said shipowner or demise charterer is carrier or bailee of the goods or under any responsibility with respect thereto, all limitations of and exonerations from liability provided by law or by the terms hereof shall be available to such other. In contracting from the foregoing exemptions, limitations and exonerations from liability, the Carrier is acting as agent and trustee for the other above mentioned.

1(b) Because the Carrier requires persons and companies to assist it in the performance of all work and services undertaken by it in connection with the goods described herein, as well as the goods of others transported or to be transported by the Carrier, it is expressly agreed between the parties hereto that the Master, officers, crew members of ocean vessels, barges or tugs used in performing or assisting in the carriage hereunder, and all other agents, representatives, independent contractors, stevedores, towers used, engaged or employed by the Carrier, shall be a beneficiary of this bill of lading and shall be entitled to all exemptions and immunities from and limitations of liability which the Carrier has under this bill of lading, and under COGSA, Canadian Water Carriage of Goods Act, enactment or convention, which is applicable under Clause No. 1 hereof, and by entering into the provisions of this bill of lading, the Carrier to the extent of such provisions, does so not only on its own behalf but also as agent and trustee of each person and company described above, all of whom shall to this extent be deemed to be a party to the contract evidenced by this bill of lading. It being always understood that said beneficiaries are not entitled to any greater or further exemptions, immunities, or limitations of liability than those that the Carrier has under this bill of lading in any given situation.

\* \* \* \* \* \*

17. The Carrier and the vessel shall be discharged from all liability in respect of loss, damage, misdelivery or in respect of another breach of this contract, unless suit is brought within one year after delivery of the shipment or the date when the shipment should have been delivered.

2. 46 U.S.C. § 1303(6), which provides in part: "In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered. \* \* \* "

3. *Bernard Screen Printing Corporation v. Meyer Line*, 464 F.2d 934 (2d Cir. 1972), *cert. denied*, 410 U.S. 910, 93 S.Ct. 966, 35 L.Ed.2d 272 (1973); *Tessler Brothers (B. C.) Ltd. v. Italpacific Line*, 494 F.2d 438 (9th Cir. 1974); *Carle & Montanari, Inc. v. American Export Isbrandtsen*, 275 F.Supp. 76 (S.D.N.Y.1967), *aff'd*, 386 F.2d 839 (2d Cir. 1967), *cert. denied*, 390 U.S. 1013, 88 S.Ct. 1263, 20 L.Ed.2d 162 (1968); *Mediterranean Marine Lines, Inc. v. John T. Clark & Son of Maryland, Inc.*, 485 F.Supp. 1330 (D.Md.1980); *Miller Yacht Sales, Inc. v. M.V. Vishva Shobba*, 494 F.Supp. 1005 (S.D.N.Y.1980); *United States v. Panama City Port Authority*, 1973 A.M.C. 734 (N.D.Fla.1972); *Croft & Scully v. Skulptor Vuchetich*, 1981 A.M.C. 305 (S.D.Tex.1981).

4. *Gebr. Bellmer KG. v. Terminal Services Houston, Inc.*, 523 F.Supp. 941 (S.D.Tex.1981); *Phil-*

tue of third-party beneficiary ("Himalaya") clauses in the bills of lading.

The dispute between Elliott and Clark revolves around a provision of the bill of lading designated as the "Himalaya Clause." Elliott contends that ¶ 1(b) is the applicable Himalaya Clause since it specifically mentions COGSA while terminal operators are not specifically mentioned as beneficiaries, and that the damages occurred to the goods while Clark was acting in the capacity of a terminal operator, alleging that Clark is therefore not entitled to the benefit of any limitation of liability under the bill of lading or COGSA. Clark concedes that it was acting in the capacity of a terminal operator when the damage to the goods allegedly occurred, but that ¶ 1(a) is the properly designated Himalaya Clause, and that terminal operators are specifically named beneficiaries of the limitations of liability enjoyed by the carrier.

If any one conclusion can be drawn from a reading of ¶¶ 1(a) and (b), it is that these paragraphs, taken together, constitute the Himalaya Clause, and when read *in pari materia*, form a clause benefitting specific third parties to the bill of lading. Clark, as a terminal operator, is entitled to the benefits conferred under ¶ 1(a) since that paragraph specifically names terminal operators as one of the beneficiaries, irrespective of the merits of the contention that terminal operators are not entitled to the benefits conferred under ¶ 1(b). In cases involving language in the bill of lading identical to that in ¶ 1(a), courts have held that the benefits to third parties include COGSA

limitations of liability. *Carle & Montanari, Inc. v. American Export Isbrandtsen Lines*, 215 F.Supp. 76 (S.D.N.Y.1967), aff'd, 386 F.2d 839 (2d Cir. 1967), *cert. denied*, 390 U.S. 1013, 88 S.Ct. 1263, 20 L.Ed.2d 162 (1968); *Mediterranean Marine Lines, Inc. v. John T. Clark & Son of Maryland, Inc.*, 485 F.Supp. 1330 (D.Md.1980).[5]

Reaching the same conclusion in this case does not thereby render ¶¶ 1(a) and (b) duplicative of one another. Different interests are protected in each paragraph. ¶ 1(a) extends COGSA limitations of liability to third parties who are sued in the capacity of carrier or bailee. ¶ 1(b) extends the protection to all others who may assist the carrier in a capacity other than as a carrier or bailee. This seemingly nice distinction has been used to justify the denial to third parties of COGSA protection where only the language of ¶ 1(a) appeared in the bill of lading. *See Hanson & Orth, Inc. v. M/V Jalatarang*, 450 F.Supp. 528 (S.D.Ga.1978) (Stevedore which negligently caused fire on vessel during unloading held not entitled to protection of either COGSA or the Fire Statute (46 U.S.C. § 182) under bill of lading provision identical to ¶ 1(a) in the document now under consideration, since stevedore was sued strictly in capacity of stevedore, not in capacity of carrier or bailee). The inclusion of ¶ 1(b) effectively cuts off the contention successfully raised by the consignees in *Hanson*. It is also apparent that ¶ 1(b) does not specifically include terminal operators as a third-party beneficiary simply because it is almost impossible to conceive a factual scenario in which a ter-

lip Bros. v. Mitsui O. S. K. Lines, Ltd., 1976 A.M.C. 183 (S.D.N.Y.); *Elgin National Industries, Inc. v. SS Weser Express*, 1973 A.M.C. 1404 (S.D.N.Y.1973).

5. It is clear that even in cases in which courts have held that the Himalaya Clause containing language similar to the language of ¶ 1(a) failed to extend COGSA limitations of liability to certain third parties, the determination turned on whether the clause sufficiently particularized the third parties to be protected, *i.e.*, whether the general terms "agents" or "independent contractors" were sufficient to include steve-

dores or terminal operators under the clause's protective umbrella where the specific terms "stevedores" or "terminal operators" were not used. That the limitations of liability to be extended included those under COGSA was accepted apparently by all parties as well as the courts, as a given fact. *See, e.g., DeLaval Turbine, Inc. v. West India Industries, Inc.*, 502 F.2d 259 (3rd Cir. 1974); *Toyomenka, Inc. v. SS Tosaharu Maru*, 523 F.2d 518 (2d Cir. 1975); *LaSalle Machine Tool, Inc. v. Maher Terminals, Inc.*, 611 F.2d 56 (4th Cir. 1979). Additional cases finding that COGSA limitations of liability were extended by similar bill of lading clauses are contained in nn. 3 and 4, *supra*.

minal operator could be sued in a status other than that of a bailee, so that its inclusion is unnecessary.

The contracting parties' intent to protect Clark acting in the capacity of terminal operator, manifested by ¶ 1(a) of the bill of lading, is consistent with certain provisions of the stevedoring contract entered into between Clark and American Export Lines, Inc., predecessor in interest to Farrell, in 1973. That contract, in which Clark agreed to provide stevedoring and terminal yard services, states in Section XI(B)(2),

> With respect to claims for loss or damage to cargo or baggage, the liability of the contrator [sic] shall be limited by the vessel Owners bill of lading and/or baggage ticket clauses. It being the intention of the parties herein that the Contractor, where such limitation [sic] are valid, is not liable to cargo or other interests to any greater extent than is the vessels interests. * * *

**6.** ¶ 12 provides as follows:

* * * The Carrier may, without giving notice either of arrival or discharge, deliver the container(s) and/or goods onto any wharf, craft or place that the Carrier or Port Authorities may select, and continuously Sundays and Holidays included, in daytime or nighttime, no matter what the state of the weather or custom of the port may be. All lighterage and use of craft in loading and discharging shall be at the risk and expense of the goods. It is agreed that delivery by the Carrier in any event shall take place upon discharge from vessel to a safe lighter or dock and that the responsibility of the Carrier in any capacity shall altogether cease when the goods have been discharged and possession is received or taken by customs or other authorities, or by the operator or person in charge of any lighter, craft, wharf, store, warehouse, elevator or other facilities, whether selected by the shipper, consignee or owner of the goods or by port authorities, or by the Carrier, unless it be shown that any loss or damage to the goods was caused by the Carrier's negligence in selecting the lighter or dock. The burden of establishing such negligence being on the shipper or consignee. All charges and expenses of whatsoever nature, connected with the discharge, subsequent to custody and delivery and other disposition of the goods, shall be at the expense of those goods unless specifically included in the freight.. It is agreed that when possession of the goods is received or taken by the customs

This provision clearly indicates that Clark was an intended third-party beneficiary of Farrell's bill of lading, whether it was performing stevedoring services or terminal yard services. If the bill of lading governed the rights and obligations of the parties at the time the damage to the cargo occurred, Clark is entitled to COGSA limitations of liability, specifically that of the Statute of Limitations, as a third-party beneficiary to the bill of lading.

## II. At What Point "Delivery"?

The question that must now be addressed is "whether what the right hand had extended in the COGSA incorporation * * * the left hand had taken back in a couple of 'except as may be otherwise specifically provided herein' clauses, the effect of which would be *contractually* withdrawing this post-discharge occurrence from COGSA." (Emphasis in original). *Zajicek v. United Fruit Company,* 459 F.2d 395, at 399. Elliott points to ¶ 12 [6] of the bill of lading as

or other authorities or by an operator of any lighter, craft, dock, pier store, warehouse, refrigerator, elevator or other facilities whether selected by the Carrier or Master, shipper or consignee, whether public or private, such authority or person shall be considered as having received delivery of the goods solely as agent of and on behalf of the shippers/consignee at the risk of the goods, subject to any lien of the Carrier thereon. The Carrier or Master may appoint a stevedore or other person to unload and take delivery of the goods and such delivery from ship's tackle shall be considered complete and all responsibility of the Carrier shall then terminate. If the consignee does not take possession and delivery of the goods, as soon as the goods are at the disposal of the consignee, as described above or otherwise, the goods shall be at their own risk and expense, delivery shall be considered to be complete and the Carrier may, subject to all liens, send the goods to store, warehouse, put them in lighters or other craft, put them in the possession of the authorities, dump, permit to lie where landed or otherwise disposes of them always at the risk and expense of the goods, the shipper/consignee shall pay and indemnify the Carrier for any loss, damage, or fine, charge or expense whatsoever suffered or incurred in dealing with or disposing of the goods or by reason of consignee's failure and delay in taking prompt possession and delivery as provided herein. All responsibility of the Carrier in any capacity shall altogether

an exception to ¶ 1 that takes this post-discharge occurrence out of the governance of COGSA and terminates the rights and obligations of all parties to the bill of lading. By the terms of ¶ 12, Elliott asserts, the carrier's responsibility terminated upon discharge of the containers onto the pier, and from that time Clark was acting as an agent, and on behalf, of the consignee, Elliott, rather than the carrier, Farrell.

■ Although COGSA applies *ex proprio vigore* only from "tackle-to-tackle," 46 U.S.C. § 1301(e), the parties to a bill of lading may extend the time within which the provisions of COGSA may govern to a time prior to loading or subsequent to discharge. 46 U.S.C. § 1307. The shipper, consignee and carrier agreed to this in ¶ 1 of the bill of lading. In addition, the Harter Act [7] governs the period of time following discharge of the goods to their proper delivery, and to the extent that contractual provisions in a bill of lading conflict with the Act, they are null and void. *See David Crystal, Inc. v. Cunard Steam-Ship Co.*, 339 F.2d 295, 297 (2d Cir. 1964), *cert. denied*, 380 U.S. 976, 85 S.Ct. 1339, 14 L.Ed.2d 271 (1965); *Caterpillar Overseas, S.A. v. SS Expeditor*, 318 F.2d 720, 723 (2d Cir. 1963), *cert. denied*, 375 U.S. 942, 84 S.Ct. 347, 11 L.Ed.2d 272; *Levatino Company v. American President Lines, Ltd.*, 233 F.Supp. 697, 701 (S.D.N.Y.1964), *aff'd*, 337 F.3d 729 (2d Cir. 1964); *Central Trading Corp. v. M/V "Dong Myung"*, 361 F.Supp. 302, 304 (S.D.N.Y.1973); *Pine Street Trading Corporation v. Farrell Lines, Inc.*, 278 Md. 363, 380, 364 A.2d 1103, 1114 (1976). As a consequence, if Farrell's definition of delivery and disclaimer of liability in ¶ 12 of the bill of lading conflict with what was required in order to constitute "proper delivery" to the consignee under the Harter Act, the definition and disclaimer are null and void.

In *Orient Overseas Line v. Globemaster Baltimore, Inc.*, 33 Md.App. 372, 365 A.2d 325 (1976), the Court, in determining what the Harter Act requires for a proper delivery, stated:

"Proper delivery" within the provisions of this Act means either actual or constructive delivery. Actual delivery consists in completely transferring the possession and control of goods from the vessel to the consignee or his agent. Constructive delivery occurs where the goods are discharged from the ship upon a fit wharf and the consignee receives due and reasonable notice that the goods have been discharged and has a reasonable opportunity to remove the goods or put them under proper care and custody. * * * (Citations omitted).

* * * Absent the consignee, to constitute a "proper delivery" due and reasonable notice must be given to the consignee of the intended delivery and the goods must be placed in a suitable place and under proper care and custody. *Constable v. National S.S. Co.*, 154 U.S. 51, 14 S.Ct. 1062, 38 L.Ed. 903 (1894).

*Id.* at 383–384, 365 A.2d at 335–336.

■ Whether a conflict does or does not exist depends in large part upon what constituted a delivery under the terms contained in the entire bill of lading. On the front of the bill of lading appear the words, "Pier to Pier Traffic Loading in Cont. No. ITLU 745034, ITLU 745036." In the affidavit of Leslie F. McCorkle, Manager of Insurance and Claims for Clark, McCorkle states the following with respect to cargo designated "Pier to Pier":

Cargo or containers designated as "Pier to Pier" on the Farrell Bill of Lading

---

cease and the goods shall be considered to be delivered in any or all of the ways described and provided for herein or otherwise.

7. 46 U.S.C. § 190, which provides:

It shall not be lawful for the manager, agent, master or owner of any vessel transporting merchandise or property from or between ports of the United States and foreign ports to insert in any bill of lading or shipping document any clause, covenant, or

agreement whereby it, he or they shall be relieved from liability for loss or damage arising from negligence, fault or failure in proper loading, stowage, custody, care or proper delivery of any and all lawful merchandise or property committed to its or their charge. Any and all words or clauses of such import inserted in bills of lading or shipping receipts shall be null and void and of no effect.

indicate that such freight is to be discharged from the respective vessel by Clark and taken to the Farrell Lines containers yard. From this location, it is then taken to Shed 4, which is leased by Farrell and operated by Clark personnel, in order that the cargo may be removed or "stripped" and then placed in other containers or on trucks procured by the consignee for overland delivery. Under the designation of "Pier to Pier" the consignee does not receive delivery until it is removed from the Farrell containers and placed in or on the overland truck.

McCorkle affidavit, at 2. McCorkle also distinguishes the designation "Pier to Pier" from the designation "House to House," which McCorkle indicates as meaning that the consignee receives delivery upon discharge from the ship and the cargo is picked up by the consignee or overland trucker from the Farrell Lines container yard. *Id.*

At the very least, the designation "Pier to Pier" renders the carrier liable under both the Harter Act and the terms of the bill of lading for damage to cargo until the cargo is received by the consignee or an overland trucker contracted for by the consignee, or until the consignee has received due notice of the intended delivery and a reasonable time has elapsed within which the consignee could have taken delivery but has not. *See Grover-Ferguson Company, Inc. v. A/S Ivarans Rederi*, 171 F.Supp. 766 (E.D.Pa. 1959); *cf. Phillipp Brothers Metal Corporation v. S.S. Rio Iguazu*, 658 F.2d 30 (2d Cir. 1981) (Carrier had discharged duties under bill of lading and COGSA where consignee requested warehouseman storing goods on behalf of carrier to weigh and count them, then allowed goods to remain with warehouseman, and goods were subsequently found to be short in number when received by consignee). During this time, the bill of lading continues to govern the rights and obligations of the parties. As stated in *Leather's Best, Inc. v. S.S. Mormaclynx*, 451 F.2d 800, at 807 (2d Cir. 1971):

> While the loss of the container occurred after the act of carriage had been completed, that does not mean that the contract of carriage, obviously a maritime contract, was at an end; the contract continues to govern the relationship between a shipper and a carrier after discharge but before delivery. (Footnote omitted).

*See also David Crystal, Inc. v. Cunard Steam-Ship Co., supra*, 339 F.2d at 297. Since the damage to the cargo occurred one day after discharge in this case, it could not be said that a reasonable time within which the consignee could have taken delivery had elapsed, and the carrier remained liable for damage.

If the carrier remains liable as a bailee before proper delivery is effected to the consignee, it is entitled to the benefit of any limitations of liability it reserved unto itself in the bill of lading. It would take a tortuous construction of the bill of lading to find that in unsuccessfully attempting to relieve itself completely of its potential liability for post-discharge damage to cargo, the carrier during the post-discharge period thereby forfeits all COGSA *limitations* of liability which the bill of lading provides. ¶ 1(a) as it relates to terminal operators would be virtually meaningless under such an interpretation. Such a construction of the bill of lading would fly in the face of the carrier's plain intention, expressed in a legally permissible manner, to limit not only its own liability but that of third parties when damage occurs to cargo during the post-discharge period.

Elliott relies on *Federal Insurance Co. v. American Export Lines*, 113 F.Supp. 540 (S.D.N.Y.1953), for the proposition that the terms of ¶ 12 take the period during which the damage to the cargo allegedly occurred out of the scope of COGSA. In *Federal Insurance*, the carrier was sued for damage to cargo that occurred as the cargo was being unloaded from the ship to a lighter. The bill of lading contained provisions similar to those of ¶ 12. In rejecting the carrier's COGSA defense, the court held that because the bill of lading had specifically provided that all lighterage would be at the risk and expense of the goods, the carrier had intended COGSA to be inapplicable

during this part of the carrier's "non-possessive custody" period.[8] The difference between that case and this is that there was no clear intention manifested by the provisions in the bill of lading in *Federal Insurance* to make COGSA applicable during the time cargo was discharged to a lighter. However, ¶¶ 1 and 1(a) do manifest a clear intention on the part of the carrier that COGSA would apply during the post-discharge period in which the carrier would remain liable as bailee. The *Federal Insurance* rationale has a limited application.

Elliott also contends that ¶ 12, by providing that a warehouseman receives the delivery of the goods solely as agent of and on behalf of the shippers/consignees at the risk of the goods, effectively makes Clark the agent of Elliott rather than Farrell. To the extent that this provision conflicts with the Harter Act as a disclaimer of liability, it is null and void. 46 U.S.C. § 190. Moreover, the facts clearly belie the notion that Clark was acting as anything other than Farrell's agent. In addition to the stevedoring contract between Clark and Farrell, all instructions relative to handling the cargo by Clark prior to receipt by the overland trucker were given by Farrell, not Elliott. McCorkle affidavit, at 3. All the work done by Clark covered by a "Pier to Pier" designation in a bill of lading is billed directly to Farrell's account. *Id.* at 2. Additionally, cargo designated "Pier to Pier" is processed at a higher cost to Farrell than is cargo designated "House to House", because of the additional work involved on behalf of the carrier. Affidavit of John P. Rohde, District Marketing Manager for Farrell Lines, at 1. It is clear that Clark provided services on behalf of Farrell rather than Elliott.

Jurisdiction is based on diversity of jurisdiction under 28 U.S.C. § 1332, and the law governing Elliott's claim is land-based law rather than federal maritime law. *Leath-er's Best, Inc. v. S.S. Mormaclynx, supra,* 451 F.2d at 808, 817, *on remand, Leather's Best, Inc. v. Tidewater Terminal, Inc.,* 346 F.Supp. 962 (S.D.N.Y.1972). The test imposed by *Herd, supra,* having been satisfied, under Maryland law Clark is entitled to all of the defenses that are available to Farrell under the bill of lading. *See Howard Cleaners v. Perman,* 227 Md. 291, 295, 176 A.2d 235, 237 (1961). Those defenses include all limitations under COGSA and the bill of lading.

In summary, the bill of lading remained in force at the time that the damage to the container allegedly occurred. Clark is therefore entitled to avail itself of the statute of limitations provided for in COGSA and the bill of lading.[9] Delivery having been received by Elliott's overland trucker no later than February 28, 1980, and this action having been filed on August 19, 1981, this action was filed beyond the one year limitations period and is consequently time-barred.

In accordance with the foregoing, it is this 13th day of July, 1982 by the United States District Court for the District of Maryland, ORDERED:

That the motion of defendant for summary judgment BE, and the same IS, hereby GRANTED.

---

8. Of similar import are *Remington Rand, Inc. v. American Export Lines, D. C.,* 132 F.Supp. 129 (S.D.N.Y.1955), and *In Re Petterson Lighterage & Towing Corporation,* 154 F.Supp. 461 (S.D.N.Y.1957), *aff'd,* 253 F.2d 952 (2d Cir. 1958).

9. Under similar facts, Chief Judge Kaufman of this Court reached the same conclusion in *Koppers Company, Inc., et al. v. S/S DEFIANCE, et al.,* 542 F.Supp. 1356 (D.Md.1982).