**B. ELLIOTT (CANADA) LTD.,**
Appellant,

v.

**JOHN T. CLARK & SON OF MARYLAND, INC., Appellee.**

No. 82–1710.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 9, 1983.

Decided April 11, 1983.

Christopher F. Drummond, Baltimore, Md. (William C. Stifler, III, Baltimore, on brief), for appellant.

H. John Bremermann, III, Baltimore, Md. (R. Roger Drechsler, J. Paul Mullen, Lord, Whip, Coughlan & Green, P.A., Baltimore, Md., on brief), for appellee.

Before HALL and SPROUSE, Circuit Judges, and BRYAN, Senior Circuit Judge.

K.K. HALL, Circuit Judge:

Plaintiff, B. Elliott (Canada) Ltd. ("Elliott") brought this diversity action against defendant John T. Clark & Son of Maryland, Inc. ("Clark") for damages to cargo in the amount of $15,567.27, allegedly sustained while in the custody of Clark following its discharge from the vessel M/V Lightning. The issue is whether Clark is entitled to the benefit of the Carriage of Goods by Sea Act (COGSA) one-year statute of limitations as incorporated in the bill of lading.[1] The district court, 542 F.Supp. 1367, found that this action was time-barred and granted summary judgment for Clark. We affirm.

I.

Elliott, a Canadian corporation, purchased a gear hobber from an East German manufacturer. Elliott's freight forwarder arranged for ocean carriage of the cargo with Farrell Lines, Inc. ("Farrell"). The cargo was shipped in two containers and was first placed aboard the S/S Defiance in Hamburg, West Germany, and later off-loaded onto the M/V Lightning.

---

1. The one-year statute of limitations of COGSA appears in 46 U.S.C. § 1303(6), which provides insofar as pertinent that:

   In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered.

Farrell issued a printed form bill of lading. The designation "pier-to-pier" was stamped on the face of the bill. This designation means the consignee does not receive delivery until the cargo is removed from the carrier's containers and placed in or on an overland truck.[2]

On February 10, 1980, the cargo arrived at the Dundalk Marine Terminal in Baltimore aboard the M/V Lightning. Pursuant to its contract with Farrell's predecessor in interest for stevedoring and other services, Clark unloaded the containers from the vessel. The container holding the cargo that is the subject of this action was placed on a chassis and stored in a container yard owned by Farrell.

On the following day, Clark instructed one of its yard hustlers, John Kowaleviocz, to pick up the chassis carrying the container with Elliott's cargo at the container yard and bring it to Shed Number 4 in order to remove the cargo from the container so that it could be picked up by the overland trucker. As Kowaleviocz entered Shed Number 4, the container tipped over causing damage to Elliott's cargo. On or before February 28, 1980, the overland trucker received delivery of the cargo. More than one year later, on August 28, 1981, Elliott instituted this action.

## II.

On appeal, Elliott concedes that Clark was the agent of Farrell. Elliott contends that by virtue of ¶ 12 of the bill of lading the COGSA one-year statute of limitations incorporated in the bill of lading does not apply to this case. Elliott further contends that the bill of lading does not extend the COGSA one-year statute of limitations to Clark. Finally, Elliott contends that the district court erred by looking to the stevedoring contract between Farrell's predecessor in interest and Clark to interpret the limitation-of-liability clauses in the bill of lading. We find no merit in these contentions.

2. By contrast, cargo shipped under the designation "house to house" means the consignee has requested delivery immediately upon discharge from the ship and no further handling would be

In order to decide this case, we must look to the bill of lading between Elliott and Farrell, as well as two applicable statutes, COGSA, 46 U.S.C. §§ 1300 *et seq.,* and the Harter Act, 46 U.S.C. §§ 190 *et seq.* A bill of lading is a receipt for goods and constitutes the contract for carriage and delivery of goods between the shipper and carrier. Gilmore, G. & C. Black, Jr., *The Law of Admiralty* § 3–1 (2d ed. 1975); *Black's Law Dictionary* 210 (rev. 4th ed. 1968). It continues to govern the rights and obligations of the parties until delivery. *David Crystal, Inc. v. Cunard Steamship, Inc.,* 339 F.2d 295, 297 (2d Cir.1964), *cert. denied,* 380 U.S. 976, 85 S.Ct. 1339, 14 L.Ed.2d 271 (1965). By its own terms, COGSA only "covers the period from the time when the goods are loaded on to the time when they are discharged from the ship," but parties to a bill of lading may contract to extend the time period prior to loading and after discharge. 46 U.S.C. §§ 1301(e); 1307. In addition, the Harter Act also covers the period after discharge until delivery, and to the extent that the provisions of the bill of lading conflict with the Harter Act, they are null and void. 46 U.S.C. §§ 190; 1311.

In ¶ 1 of the bill of lading, Elliott and Farrell agreed that COGSA would continue to govern their rights and duties "after [the shipment] is discharged from the carrying vessel and throughout the entire time the goods are in the custody of the Carrier until made ready for delivery" absent some other provision in the bill of lading to the contrary. Elliott points to ¶ 12 of the bill of lading, which provides that delivery shall take place when the goods have been discharged and possession is received or taken, as terminating the contractual relationship of the parties to the bill of lading or at least removing responsibility for this post-discharge occurrence from the governance of COGSA. We

required because the cargo would be picked up directly by the consignee or his overland trucker.

disagree, and conclude that in this case delivery occurred when the cargo was placed on the overland truck.

■ The designation "pier to pier," which provides for delivery to the overland trucker, and ¶ 12, which provides for delivery upon discharge, are inconsistent. According to general rules of contract interpretation, separately negotiated or added terms will prevail over the conflicting printed part of a contract. *Schapiro v. Chapin,* 159 Md. 418, 421–22, 151 A. 44 (1930).

■ Here, Elliott and Farrell specified on the face of the bill of lading that the cargo be shipped and handled as "pier to pier." This required Farrell to have the cargo removed from the container and placed in or on the overland truck. Farrell retained Clark to fulfill its obligation to place the cargo in or on the overland truck pursuant to the "pier to pier" designation and placed the cargo in the custody of Clark. At no time did Elliott contact Clark with instructions regarding the care and handling of the cargo. All instructions relating to Clark's activities were received directly from Farrell. Because the designation "pier to pier" was stamped on the face of the bill of lading, it is controlling and prevails over the conflicting definition of delivery found in ¶ 12 of the printed form part of the bill of lading. Thus, at the time the damage to the cargo occurred, it had not been delivered because it had not been removed from the container and placed in or on the overland truck as required by the "pier to pier" designation.

Moreover, under the Harter Act, Farrell was obligated as bailee to effect "proper delivery" of the cargo. "Proper delivery" under the Harter Act means:

either actual or constructive delivery. Actual delivery consists in completely transferring the possession and control of goods from the vessel to the consignee or his agent. Constructive delivery occurs where the goods are discharged from the ship upon a fit wharf and the consignee receives due and reasonable notice that

the goods have been discharged and has a reasonable opportunity to remove the goods or put them under proper care and custody. . . .

. . . Absent the consignee, to constitute a "proper delivery" due and reasonable notice must be given to the consignee of the intended delivery and the goods must be placed in a suitable place and under proper care and custody.

*Orient Overseas Line, Inc. v. Globemaster Baltimore, Inc.,* 33 Md.App. 372, 383–84, 365 A.2d 325, 335–36 (1976).

Under the bill of lading and the Harter Act, Farrell was obligated concurrently as carrier and as bailee until the cargo was placed in or on the overland truck pursuant to the "pier to pier" designation, or at the very least until after Elliott received due and reasonable notice of the intended delivery to the overland trucker and a reasonable time in which to take delivery had elapsed. Here, the damage to the cargo occurred one day after discharge but prior to delivery to the overland trucker. Because delivery under the bill of lading and under the Harter Act had not yet taken place when the damage to the cargo occurred, the bill of lading continued to govern the rights and obligations of the parties at the time the damage to the cargo occurred. The COGSA one-year statute of limitations as incorporated in the bill of lading also continued in effect.

■ It is well-established that the parties to a bill of lading may extend certain COGSA limitations of liability to third parties. However, the intent to do so must be clearly expressed. *Robert C. Herd & Company, Inc. v. Krawill Machinery Corporation,* 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959); *La Salle Machine Tool, Inc. v. Maher Terminals, Inc.,* 611 F.2d 56 (4th Cir.1979).

Paragraph 1(a) of the bill of lading between Elliott and Farrell specifically names terminal operators as one of the classes of beneficiaries.[3] In cases involving language in bills of lading identical to that in ¶ 1(a), courts have held that the benefits to third

---

**3.** Paragraph 1(a) of the bill of lading provides that:

1(a) The Carrier shall be entitled to the full benefit of, and right to, all limitations or

parties include COGSA limitations of liability. *Carle Montanari, Inc. v. American Export Isbrandtsen Lines,* 275 F.Supp. 76 (S.D. N.Y.1967), *aff'd,* 386 F.2d 839 (2d Cir.1967), *cert. denied,* 390 U.S. 1013, 88 S.Ct. 1263, 20 L.Ed.2d 162 (1968); *Mediterranean Marine Lines, Inc. v. John T. Clark & Son of Maryland, Inc.,* 485 F.Supp. 1330 (D.Md.1980).

■ Elliott, however, contends that Clark was not acting as bailee of the cargo when the damage occurred and, therefore, does not benefit from the provisions of ¶ 1(a). This contention is incorrect. Paragraph 1(a) provides limitations to all named entities including agents, stevedores and terminal operators who "shall be deemed liable with respect to the goods as carriers, bailee or otherwise, howsoever in contract or in tort." At the time of the damage, Clark had possession of the cargo pursuant to its contract with Farrell's predecessor in interest.[4] Thus, since the bill of lading governed the rights and obligations of the parties at the time the damage to the cargo occurred, then Clark, as a terminal operator, is entitled to benefit from the COGSA one-year statute of limitations incorporated in the bill and this action is time-barred.

### III.

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

exemption from liability authorized by any provisions of Sections 4281 to 4288 inclusive of the Revised Statutes of the United States and amendments thereto and of any other provisions of the laws of the United States or of any other country whose laws shall apply. The terms of this bill of lading constitute the contract of carriage, which is between the shipper, consignee and authorized owner of the goods, and the Carrier, owner or demise charterer of the vessel designated to carry the shipment. It is understood and agreed that other than the Carrier, owner or demise charterer, no person, firm or corporation or other legal entity whatsoever (including the Master, officers and crew of the vessel, all agents, employees, representatives, and all *terminal operators,* stevedores, watchmen and other independent contractors whatsoever) is, or shall be deemed liable with respect to the goods *as carriers, bailee or otherwise,* howsoever in contract or in tort. *If however, it shall be adjudged that any other than said*

*shipowner or demise charterer is carrier or bailee of the goods or under any responsibility with respect thereto, all limitations of and exonerations from liability provided by law or by the terms hereof shall be available to such other.* In contracting from the foregoing exemptions, limitations and exonerations from liability, the Carrier is acting as agent and trustee for the other above mentioned. (Emphasis added).

4. Even if the district court erred in looking to the stevedoring contract entered into between Farrell's predecessor in interest and Clark in order to interpret the limitation-of-liability clauses in the bill of lading, we find such error to be harmless. The terms of ¶ 1(a) alone are sufficiently clear to meet the "clarity of language" requirement of *Robert C. Herd & Company, Inc. v. Krawill Machinery Corporation, supra,* and to extend the benefit of the one-year statute of limitations to Clark.