704 F.2d 1309
 KOPPERS COMPANY, INC.; Paul Wurth, S.A. and Republic Steel
Corporation, Appellants,
v.
S/S DEFIANCE, her engines, boilers, etc.; Farrell Lines,
Inc.; Chesapeake Operating Co. Inc. and John T.
Clark and Son of Maryland, Inc., Appellees.
 No. 82-1714.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 9, 1983.
Decided April 11, 1983.
 
 David W. Skeen, Baltimore, Md. (James D. Skeen, Constable, Alexander, Daneker & Skeen, Baltimore, Md., on brief), for appellants.
 H. John Bremermann, III, Baltimore, Md. (R. Roger Drechsler, J. Paul Mullen, Lord, Whip, Coughlan & Green, P.A., Baltimore, Md., on brief), for appellees.
 Before HALL and SPROUSE, Circuit Judges, and BRYAN, Senior Circuit Judge.
 K.K. HALL, Circuit Judge:
 
 
 1
 Plaintiffs, Koppers Company, Inc. (Koppers), Paul Wurth, S.A. (Wurth), and Republic Steel Corporation (Republic) brought this action against S/S Defiance, Farrell Lines, Inc. (Farrell), John T. Clark & Son of Maryland, Inc. (Clark) and Chesapeake Operating Company, Inc., for damages to cargo owned by or consigned to plaintiffs. The issue is whether Clark is entitled to the $500 limitation of liability set forth in Section 4(5) of the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. Sec. 1304(5)[1] and incorporated in the bill of lading issued by Farrell. The district court, 542 F.Supp. 1356, found for Clark and entered summary judgment in favor of plaintiffs in the amount of only $500. We affirm.
 
 I.
 
 2
 On August 21, 1979, Koppers ordered from Wurth certain spare parts for a blast furnace to be sold to Koppers' customer, Republic. The parts were packaged in four crates. Wurth's freight forwarders made arrangements for shipment from Antwerp, Belgium, to Bremen, West Germany, for delivery to Farrell. On August 28, 1979, a bill of lading was issued on forms of Farrell and signed by its agent. Farrell then made arrangements for overland carriage from Bremen to Bremerhaven, West Germany. Three of the four crates were placed in one container. The fourth crate, containing a Warren Bell Less Top Furnace, was attached with wires and turnbuckles to a "flat rack" container owned by Farrell. The cargo was then loaded aboard the S/S Defiance, a vessel owned and operated by Farrell, for shipment to Baltimore, Maryland, where it was to be delivered to Koppers. From Baltimore, the parts were to be shipped by truck to Republic's plant in Warren, Ohio.
 
 
 3
 The cargo arrived in Baltimore aboard the S/S Defiance and on September 10, 1979, was discharged from the vessel at the Dundalk Marine Terminal by Clark, a stevedoring firm which performs services under contract with Farrell's predecessor in interest. The cargo, still attached to the "flat rack" container, was lifted by crane out of the hold of the vessel and placed upon a chassis owned by Farrell. That chassis, along with the "flat rack" container, was then hauled by a yard hustler owned by Clark and operated by a Clark employee to the container yard within the terminal, some 300 yards from the point of discharge. The chassis and "flat rack" container remained there overnight.
 
 
 4
 On September 11, 1979, Joseph Letts, a Clark employee, was instructed by his foreman to bring the chassis with the "flat rack" from the container yard to Shed Number 4, a portion of which is leased by Farrell and operated by Clark for cargo storage and preparation of cargo for inland shipment. After attaching the yard hustler to the chassis bearing the "flat rack" container, Mr. Letts attempted to move the chassis out of the container yard when it fell, damaging the cargo in the container. Had the accident not occurred, the "flat rack" container would have been hauled to Shed Number 4 where the crate with the furnace part would have been removed from the container and loaded for delivery to Warren, Ohio, on a trailer owned by the overland trucker selected by Koppers' customs house broker.
 
 
 5
 Stamped on the face of the bill of lading was the designation "pier to pier." That designation required the handling of the cargo by Farrell before its loading on and after its discharge from the vessel. Cargo shipped under the designation "pier to pier" is unloaded from the vessel and taken to the container yard. It is then taken to a facility within the terminal, such as Shed Number 4, to be removed from the container, repackaged, if necessary, and loaded on one or more trucks for the balance of its journey to the ultimate consignee. An additional fee is paid to the carrier by the shipper for a "pier to pier" shipment to cover the cost of preparing the cargo for overland shipment.[2]
 
 
 6
 All services performed by Clark in connection with the discharge of the containers from the vessel and the transportation of those containers to the container yard were classified as "stevedoring operations" by Clark and were billed as such by Clark to Farrell. All services performed by Clark in connection with the transportation of the containers from the container yard to Shed Number 4 and the preparation of the cargo for loading onto a trailer were classified as "terminal operations" by Clark and were billed as such by Clark to Farrell.
 
 
 7
 Following the accident, plaintiffs instituted this action for damages to the cargo. The negligence of Clark's employee, Joseph Letts, was admitted. The parties stipulated that if Clark prevailed, defendants were liable to plaintiffs, jointly and severally, in the amount of $500 and if plaintiffs prevailed, defendants were liable to plaintiffs, jointly and severally, in the amount of $50,000. In the context of the issue stipulated, Clark prevailed, and the district court granted judgment limiting Clark's liability to $500. Plaintiffs appeal.
 
 II.
 
 8
 On appeal, plaintiffs submit that Clark was not Farrell's agent when the damage to the cargo occurred. They contend that by virtue of p 12 of the bill of lading the COGSA $500 limitation of liability incorporated in the bill of lading does not apply to this case. Plaintiffs further contend that the bill of lading does not extend the COGSA $500 limitation to Clark. Finally, plaintiffs contend that the district court erred in admitting and relying upon evidence extrinsic to the bill of lading to determine the question of agency and the meaning of the designation "pier-to-pier." To the extent that these contentions are the same as those raised in B. Elliott (Canada) Ltd. v. John T. Clark & Son of Maryland, Inc., 704 F.2d 1305 (4th Cir.1983), decided this same date, we find them to be equally lacking in merit in this case.[3] Nor do we find any merit in plaintiffs' remaining contentions.
 
 
 9
 Because the designation "pier to pier" stamped on the face of the bill of lading required Farrell to load the cargo on one or more trucks for delivery to Republic in Warren, Ohio, we conclude, as we did in B. Elliott (Canada) Ltd., supra, that delivery had not yet occurred when the cargo was damaged. The bill of lading in this case, therefore, governed the rights and obligations of the parties at the time of the accident, and the COGSA $500 limitation of liability incorporated in the bill of lading also continued in effect.
 
 
 10
 Plaintiffs point to p 12 of the bill of lading, which provides that the operator of a warehouse receives delivery of the goods solely as agent of the shippers/consignees at the risk of the goods. Because of this provision, they contend that Clark was the agent of Koppers. We conclude that the district court's finding that Clark was acting as the agent of Farrell was entirely correct.
 
 
 11
 The facts belie the notion that Clark was not acting as Farrell's agent. At the time of the accident, Clark was performing services for Farrell pursuant to their stevedoring contract. It included the services Clark was rendering at the time of the accident as well as stevedoring services. Clark was paid by Farrell for transporting the containers from the container yard to Shed Number 4 and then removing the cargo from the containers and repackaging the cargo for inland shipment. Clark's performance was subject to the general control and supervision of Farrell. Farrell gave Clark all instructions relative to the handling of the cargo prior to any delivery to the overland trucker. Under these circumstances, it is clear that Clark was Farrell's agent.
 
 
 12
 Plaintiffs rely on DeLaval Turbine, Inc. v. West India Industries, Inc., 502 F.2d 259 (3rd Cir.1974), for their contention that evidence of the relationship between Farrell and Clark extrinsic to the bill of lading is inadmissible. Their reliance is misplaced. DeLaval held that evidence of prior dealings between the carrier and its stevedore was inadmissible for the purpose of determining whether the term "bailee" used in the bill of lading included stevedores. Here, the district court looked to the contract between Clark and Farrell's predecessor to determine that Clark was acting as an agent of Farrell and as a stevedore and/or terminal operator within the meaning of the bill of lading. The contract merely establishes that Clark was one of the specific entities named as "terminal operators" in the bill of lading. The contract was properly admissible for such a purpose.
 
 
 13
 Plaintiffs would also have us accept their contentions that the designation "pier to pier" has no meaning. We decline the invitation. It is a term used throughout the shipping industry, and it has a definite meaning in the industry. The designation required Farrell to load the cargo on one or more trucks for the balance of its journey to Republic's plant in Warren, Ohio, and delivery had not occurred when the cargo was damaged.
 
 III.
 
 14
 For the foregoing reasons and the reasons set forth in B. Elliott (Canada) Ltd. v. John T. Clark & Son of Maryland, Inc., 704 F.2d 1305 (4th Cir.1983), decided this same date, we hold that Clark is entitled to limit its liability to $500. Accordingly, the judgment of the district court is affirmed.
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 That statute provides in part that:
 (5) Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.
 
 
 [2]
 The designation "house to house" does not require further handling of the cargo by the carrier. Cargo shipped under the designation "house to house" is unloaded from the vessel and taken to a container yard where it is picked up by an outside trucker
 
 
 [3]
 The applicable provisions of the bills of lading are identical. However, this case involves the $500 limitation of liability, whereas B. Elliott (Canada) Ltd., supra, involves the one-year statute of limitations