**PARKER HANNIFIN CORPORATION, et al.**

v.

**CERES MARINE TERMINALS, INC.**

**Civil Action No. WMN–95–961.**

United States District Court, D. Maryland.

March 12, 1996.

Donald C. Greenman, Ober, Kaler, Grimes & Shriver, Baltimore, MD, for SR International Business Insurance Company, Ltd.

Jo Anne Zawitoski, Semmes, Bowen & Semmes, Baltimore, MD, Elizabeth Worthington Benet, Semmes, Bowen & Semmes,

Baltimore, MD, for Ceres Marine Terminals, Inc.

## MEMORANDUM

NICKERSON, District Judge.

Pending before the Court are the cross-motions for partial summary judgment filed by Defendant Ceres Marine Terminals, Inc. (Paper No. 12) and Plaintiffs Parker Hannifin Corporation and SR International Business Insurance Company Ltd. (Paper No. 13). The issues have been fully briefed and are ripe for consideration. Upon a review of the pleadings and the applicable law, the Court determines that Defendant's Motion for Partial Summary Judgment will be granted and Plaintiffs' Motion for Partial Summary Judgment will be denied.

## I. BACKGROUND

This case arises out of the damage sustained by two crates of automatic screw machinery owned by Plaintiff Parker Hannifin Corporation ("Parker Hannifin") and insured by Plaintiff SR International Business Insurance Company Ltd. ("SR International") while they were in the possession of Defendant Ceres Marine Terminals, Inc. ("Ceres"). Plaintiff Parker Hannifin shipped the two crates of machinery from Ohio to Baltimore, where it arrived at the Dundalk Marine Terminal on or about September 21, 1993. The two crates were to be loaded on board the Atlantic Container Line ("ACL") vessel M/V ATLANTIC CONVEYER within the week for carriage by sea to Bremerhaven, Germany. Defendant Ceres was hired by ACL to act as stevedore and marine terminal operator to receive, handle, store, and eventually load the crates of machinery on ACL's behalf.

On September 23, 1993, while Ceres was storing the two crates of screw machinery for ACL prior to the arrival of the M/V ATLANTIC CONVEYER, Ceres dropped another piece of cargo, that it was handling for a different ocean carrier, on top of the two crates. The contents of Parker Hannifin's two crates were damaged.

Plaintiffs subsequently filed a Complaint on March 31, 1995 against Ceres, alleging negligence and bailee liability, and claiming damages in the amount of $240,000. Defendant Ceres denied liability, and raised as an affirmative defense that, in accordance with the Carriage of Goods by Sea Act ("COGSA"), 46 App.U.S.C. § 1304(5) and the terms of ACL's regular form of bill of lading, liability for any such damage was limited to $500 per crate of machinery, or $1,000. On October 31, 1995, Defendant Ceres filed a Motion for Partial Summary Judgment on this issue. On November 15, 1995, Plaintiffs filed a cross-motion for summary judgment, seeking to strike Ceres's affirmative defense of limitation.[1]

## II. LEGAL STANDARD

It is well established that summary judgment is proper if the evidence before the court, consisting of the pleadings, depositions, answers to interrogatories, and admissions of record, establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rule 56 mandates the entry of summary judgment against a party who, after reasonable time for discovery and upon motion, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial [and] [t]he moving party is 'entitled to judgment as a matter of law.'"

---

1. Defendant Ceres argues that Plaintiffs' Motion for Partial Summary Judgment is not properly before the Court because Fed.R.Civ.P. 56 by its terms permits a claimant to move for summary judgment only upon a "claim, counterclaim, or cross claim," and not upon an answer or an affirmative defense. Although not commonly done, this Court nevertheless will consider Plaintiff's cross motion seeking to strike Defendant's affirmative defense as one for partial summary judgment. *See, e.g., Federal Savings & Loan Ins. Corp. v. Shelton*, 789 F.Supp. 1367, 1368–69 (M.D.La.1992). *See also* 10A Wright, Miller & Kane, *Federal Practice & Procedure* § 2737 at 462–63 (1983).

*Id.* at 323, 106 S.Ct. at 2553 (citations omitted).

If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Unsupported speculation is insufficient to defeat a motion for summary judgment. *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) (citing *Ash v. United Parcel Serv., Inc.,* 800 F.2d 409, 411–12 (4th Cir. 1986). Moreover, the mere existence of some factual dispute is insufficient to defeat a motion for summary judgment; there must be a genuine issue of material fact. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–11. Thus, only disputes over those facts that might affect the outcome of the case under the governing law are considered to be "material." *Id.*

With these principles in mind, the Court will address the arguments presented by the parties.

### III. *DISCUSSION*

The Carriage of Goods by Sea Act ("COGSA"), 46 App.U.S.C. § 1300 *et seq.,* which governs every contract for the carriage of goods by sea in foreign trade to or from ports of the United States, limits the amount of damages that may be claimed by a shipper for loss or damage to its goods as follows:

> Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package ... unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.

46 App.U.S.C. § 1304(5). The issue to be resolved in the pending cross-motions is whether under the facts of this case, Ceres, the stevedore contracted by ACL, is entitled to the $500 limitation of liability in § 1304(5).

The Supreme Court, in *Robert C. Herd & Co. v. Krawill Mach. Corp.,* 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959), held that § 1304(5) limited the liability of the carrier, but not the stevedore if the latter was not a party to nor a beneficiary of the contract of carriage between the shipper and the carrier. *Id.* at 308, 79 S.Ct. at 772–73. Since *Herd v. Krawill Machinery Corp.,* courts have established that carriers may extend certain COGSA limitations of liability to terminal operators, stevedores, and other third parties via third-party beneficiary clauses, known as "Himalaya Clauses" in the carrier's bills of lading. *See, e.g., Wemhoener Pressen v. Ceres Marine Terminals, Inc.,* 5 F.3d 734 (4th Cir.1993); *Koppers Co., Inc. v. S.S. DEFIANCE,* 542 F.Supp. 1356 (D.Md. 1982), *aff'd,* 704 F.2d 1309 (4th Cir.1983); *B. Elliott (Canada) Ltd. v. John T. Clark & Son,* 542 F.Supp. 1367 (D.Md.1982), *aff'd,* 704 F.2d 1305 (4th Cir.1983); *Mediterranean Marine Lines v. John T. Clark & Son,* 485 F.Supp. 1330 (D.Md.1980). Thus, a stevedore may be entitled to the $500 limitation of liability if the bill of lading covers the stevedore. *Mediterranean Marine Lines v. John T. Clark & Sons,* 485 F.Supp. 1330, 1333 (D.Md.1980); *Carle & Montanari, Inc. v. American Export Isbrandtsen Lines, Inc.,* 275 F.Supp. 76, 78 (S.D.N.Y.), *aff'd,* 386 F.2d 839 (2d Cir.1967), *cert. denied,* 390 U.S. 1013, 88 S.Ct. 1263, 20 L.Ed.2d 162 (1968).

In the instant case, Defendant Ceres argues that a Himalaya Clause is contained in Section 2 of Clause 5 of the ACL form bill of lading that expressly extends the carrier's benefits under the bill of lading to independent contractors of the carrier, such as Ceres. Plaintiffs argue that Ceres cannot take advantage of any such limitation of liability for two reasons. First, Plaintiffs argue that because Ceres was handling cargo for another carrier when it dropped the cargo on Plaintiffs' crates, ACL's bill of lading should not be construed to cover Ceres's negligent act for the other carrier. Secondly, Plaintiffs contend that because of a missing comma in the Himalaya Clause and the strict construction of such clauses required by the case law, the limitation of liability set out in ACL's bill of lading should not be extended to Ceres. This Court agrees with Defendant.

Clause 5(2) of ACL's bill of lading, which comes under the heading of "Certain Rights

and Immunities of the Carrier and Other Persons," states, in part, as follows:

> The Merchant undertakes that no claim or allegation shall be made against any person or vessel whatsoever, *other than the Carrier including, but not limited to, the Carrier's servants or agents, any independent contractor* and his servants or agents, and all others by whom the whole or any part of the carriage, whether directly or indirectly, is procured, performed or undertaken, which imposes or attempts to impose upon any such person or vessel any liability whatsoever in connection with the goods or the carriage.

Ceres's Motion for Partial Summary Judgment, Exhibit E (emphasis added). The clause goes on to require that the Merchant, in this case Parker Hannifin, hold the Carrier harmless if it makes such claim. The clause further states that

> every such person and vessel shall have the benefit of all provisions herein benefiting the Carrier as if such provisions were expressly for his benefit and in entering into this contract, the Carrier, to the extent of these provisions, does so not only on his own behalf, but also as agent or trustee for such persons and vessels and such persons and vessels shall to this extent be or are deemed parties to this contract.

*Id.*

Plaintiffs argue that Ceres cannot avail itself of the defenses of ACL under COGSA because the clause, as quoted above, contains a grammatical error, making it defective. Specifically, due to a printer's mistake, there is a comma missing after the word "Carrier" in the first part of the clause. Deposition of Howard Heslin, Plaintiffs' Exhibit D at 18. Plaintiffs, noting that strong policy reasons motivate strict construction of such clauses, point to the plain language of the clause, and argue that "grammatically the persons who the Merchant agrees not to sue, and who are thus to have carrier benefits do *not* include 'the Carrier including ... any independent contractor.'" Plaintiffs' Motion for Partial Summary Judgment at 11.

Plaintiffs rely on *Jagenberg, Inc. v. Georgia Ports Authority*, 882 F.Supp. 1065 (S.D.Ga.1995), a case involving an ACL bill of lading practically identical to the one in the instant case, in support of its argument that the $500 per package limitation of liability is not available to Ceres. Significantly, the Himalaya Clause in *Jagenberg* contained a flaw identical to the one in the instant case, that is, a missing comma after the word "Carrier." In deciding that the Himalaya Clause did not extend the $500 package limitation to the defendant terminal operator, the court in *Jagenberg* reasoned:

> As written, the word "including" modifies "Carrier," and not the preceding phrase. The Court is sure on this point for two reasons: (1) it is simply the correct grammatical reading of the sentence, and (2) the ACL bill as a whole shows that its drafters were clearly not reluctant to use commas, so there is no good reason to infer the presence of one here.

*Jagenberg,* 882 F.Supp. at 1075. In Plaintiffs' view, although ACL may have intended to extend protection to independent contractors such as Ceres, as well as include a comma after the word "Carrier," as Mr. Heslin testified at his deposition, the strict construction of Himalaya Clauses required by the case law dictates that the clause be construed against Defendant.

■ Courts have held that the bill of lading must clearly express the parties' intent to extend certain COGSA limitations of liability to third parties. *See, e.g., B. Elliott (Canada) Ltd. v. John T. Clark & Son,* 704 F.2d 1305, 1308 (4th Cir.1983); *La Salle Machine Tool, Inc. v. Maher Terminals, Inc.,* 611 F.2d 56 (4th Cir.1979). Such a requirement, however, does not preclude the use of reasonable conclusions in assessing that intent. *Koppers Co., Inc. v. S.S. Defiance,* 704 F.2d 1309, 1312 (4th Cir.1983). This Court, noting that with or without the comma, the clause at issue is somewhat difficult to decipher initially, finds that the missing comma in ACL's bill of lading does not obscure the parties' intent.

■ In *Institute of London Underwriters v. Sea–Land Service,* 881 F.2d 761 (9th Cir. 1989), the Ninth Circuit, faced with the similar task of having to decide whether a partic-

ular Himalaya Clause was ambiguous or not, focused on what the language of the clause was intended to do.[2] The Ninth Circuit held that the Himalaya Clause was not ambiguous, finding that "as a matter of common usage, [the clause] is obviously designed to extend benefits to agents and independent contractors of the carrier." *London Underwriters*, 881 F.2d at 767. The cargo interests' argued that the parenthetical phrase referring to stevedores modifies "demise charterer" and not the entire phrase beginning "any person." The Ninth Circuit rejected this argument based on the grammatical construction of the clause as a "strained syntactical" argument that would render the Himalaya Clause "extraordinarily empty." *Id.* This Court finds the reasoning in *London Underwriters* to be applicable to the instant case.

As a matter of common usage, it is clear that the purpose of clause 5(2) of ACL's bill of lading is to extend the carrier's benefits under the bill of lading to independent contractors and agents of the carrier. If one reads the phrase "including, but not limited to, the Carrier's servants or agents, any independent contractor and his servants and agents" as modifying "Carrier," and not "any person or vessel," the Himalaya Clause is, in effect, rendered meaningless and appears somewhat nonsensical. Under such a reading of the clause, this Court wonders for whose benefit the clause was created if not for the Carrier's servants or agents, independent contractors and all others who undertake or perform any part of the carriage of the goods.

In light of the common usage of such clauses in the shipping industry, and the fact that the clause does not make sense the way the court in *Jagenberg* read it, this Court finds that the Himalaya Clause in ACL's bill of lading is not ambiguous, and that therefore, Ceres as an independent contractor, is a beneficiary of COGSA's $500 per package limitation of liability.

Furthermore, this Court finds unpersuasive Plaintiffs' argument that the terms of ACL's bill of lading, including the Himalaya Clause, does not apply to Ceres where the cargo Ceres dropped on Plaintiffs' crates was being handled by Ceres for a different carrier. First of all, Plaintiffs' argument is flawed in that the nature of Ceres's activity resulting in damage to Parker Hannifin's two crates of screw machinery did indeed implicate ACL. Under the contract between ACL and Ceres, ACL hired Ceres to "receive, store, handle, [and] secure [the cargo]" prior to loading. Deposition of Howard Heslin, Defendant's Exhibit D at 36. Thus, although the damage to Parker Hannifin's two crates resulted from Ceres's dropping cargo handled for a different carrier, Ceres was, at the time, storing Parker Hannifin's cargo as obligated to do under its contract with ACL. Therefore, the terms under ACL's bill of lading do apply.

Second, as argued by Defendant in its Reply Memorandum, the cases cited by Plaintiff are distinguishable. For example, in *Singh v. M/V Saudi Diriyah*, 1991 WL 538677 (S.D.Tex.), the plaintiff contracted with the carrier to ship her Mercedes Benz automobile from Dubai, where stevedores loaded the car aboard the vessel, to New York. Before arriving in New York, the ship docked in Houston, Texas where the carrier employed another stevedore, the defendant Fairway, to unload separate and unrelated cargo that had been transported under separate bills of lading. In the course of doing so, Fairway dropped some wire coils onto the plaintiff's car, damaging it. The Fairway stevedores tried to limit their liability for damage to the car under the bill of lading issued by the ocean carrier for the car. The court in *Singh*, however, rightfully refused to extend the ocean carrier's benefits under the bill of lading for the car to Fairway, because it found that Fairway was not involved in the contract of carriage for the car. Fairway did

---

**2.** The Himalaya Clause at issue in *London Underwriters* read, in part, as follows:

If it shall be adjudged that any person other than the owner or demise charterer (including the master, time charterer, agents, stevedores, lashers, watchmen and other independent con-

tractors) is the carrier or bailee of the goods, or is otherwise liable in contractor tort, all rights, exemptions, and limitations of liability ... shall be available to such persons.
*London Underwriters*, 881 F.2d at 767.

not perform any services in connection with the car nor play any role in furtherance of the carrier's contract of carriage for the car.

In the instant case, by contrast, Ceres was handling Plaintiff's screw machinery in furtherance of the carrier ACL's contract of carriage for that machinery. Ceres was contractually obligated to receive the machinery, store it at Ceres's terminal, and then load it aboard the vessel for ACL. The damage to Plaintiff's two crates of machinery occurred while it was being stored at Ceres's terminal prior to the arrival of the vessel, and thus, unlike the facts of the *Singh* case where there was no connection between the Fairway stevedores and the contract of carriage for the plaintiff's damaged cargo, the provisions in the bill of lading for Plaintiff's machinery, including the Himalaya Clause, does apply to Ceres.

## IV.  CONCLUSION

The Court concludes that there are no genuine disputes of material fact. The Court will deny Plaintiffs' Cross Motion for Partial Summary Judgment, and will grant Defendant's Cross Motion for Partial Summary Judgment. A separate Order will issue.