LEVATINO COMPANY, Inc., Libelant-Appellee,

v.

AMERICAN PRESIDENT LINES, LTD., Respondent-Appellant.

No. 100, Docket 29035.

United States Court of Appeals Second Circuit.

Argued Oct. 21, 1964.

Decided Nov. 5, 1964.

William Warner, of Symmers, Fish & Warner, New York City, for respondent-appellant.

F. Herbert Prem, of Bigham, Englar, Jones & Houston, New York City, for libelant-appellee.

Before FRIENDLY, KAUFMAN and ANDERSON, Circuit Judges.

PER CURIAM.

American President Lines, Ltd., appeals from an interlocutory decree in admiralty holding it liable for freezing damage to chestnuts consigned to Levatino Co., Inc. The basic question is whether President Lines "properly delivered" the chestnuts so that the prohibitions on exculpatory clauses of the Harter Act, 46 U.S.C. §§ 190, 191, are inapplicable. A "proper delivery" implicitly requires that the cargo be placed upon a fit wharf at the port of destination. See Caterpillar Overseas, S. A. v. S.S. Expeditor, 318 F.2d 720, 723–724 (2d Cir. 1963). But here, even though the evidence established that fresh chestnuts are likely to freeze in a temperature range from 20°F. to 28°F., President Lines began unloading bags of chestnuts,

which had been carried from Italy, on December 11, 1960, when the thermometer had dipped as low as 20°F. There was no discharge on December 12 after 5 a. m. and throughout December 13 because of a heavy snowstorm, but when unloading resumed the mercury was again near 20°F. Moreover, the pier upon which the bags were unloaded was unheated and no emergency heating equipment was available. Even when bags were covered with tarpaulin, the icy wind could reach the chestnuts from underneath the pallets on which they were piled. And some of the chestnuts were stored in a section of the pier where the doors were opened or not permanently secured.

Under the circumstances, the District Court judge was justified in holding that most of the deliveries to the unheated pier were not "proper." An ordinarily safe wharf is not "fit" for deliveries or storage if it is being inundated by extraordinarily cold air, any more than if it is being flooded by waves of water. Here the weather was cold enough to create a serious hazard of freezing. At the very least, President Lines should have taken minimal steps to protect the chestnuts. See The Champlain, 1939 A.M.C. 9 (S.D.N.Y.).

It is true that Clause 12 of the bill of lading disclaimed responsibility for furnishing special heating facilities at the discharge pier. But that clause could relieve President Lines of liability for lack of due care only if it had made "proper deliveries," which it did not.

Nor can President Lines be excused from liability because an "act of God" may have contributed to the damage. An act of God will insulate a carrier from liability only if there is no contributing human negligence. See Prosser, Torts 222 (2d ed. 1955). But here President Lines' failure to protect the chestnuts from freezing was at least a contributing factor in the damage to the cargo.

We do not determine here the extent of the damage from freezing. The District Court judge recognized, and we agree, that a good deal of conflict exists on this issue; he, therefore, expressly disclaimed any intention to decide anything but liability. The extent and amount of damages, therefore, are left open for the commissioner to determine.

Affirmed.