**CENTRAL TRADING CORPORA-
TION, Plaintiff,**

v.

**M.V. "DONG MYUNG" her engines,
etc., et al., Defendants.**

**No. 71 Civ. 1545.**

United States District Court,
S. D. New York,
Civil Division.

July 18, 1973.

As Corrected Aug. 2, 1973.

Bigham, Englar, Jones & Houston, New York City, for plaintiff. Daniel A. Sullivan, New York City, of counsel.

Cichanowicz & Callan, New York City, for defendants. Michael J. Ryan, New York City, of counsel.

## OPINION

WHITMAN KNAPP, District Judge.

This action has been submitted to the court to determine whether the plaintiff-shipper or defendant-common carrier must bear the loss resulting from cargo damage suffered while the cargo was being carried by barge from the ship to the dock. The parties have stipulated what they deem the material facts. In substance those facts are as follows:

The shipper contracted with the carrier to transport 602 bales of woodpulp from Brunswick, Georgia to the Port of Inchon, Korea. Due to tidal conditions, ocean vessels cannot dock at the pier in Inchon Harbor, but must instead deliver their cargo by means of barges. Apparently because of this circumstance, the contract between the shipper and carrier had the following special provision:

"Notwithstanding the custom of the port, all and any cargo destined to Inchon shall be, unless otherwise provided, discharged by one stevedore appointed by the ship-owner.

The performance of discharge in this instance to include receipt of cargo from ship's tackles onto barges, towing of barges to landing point, landing and trucking, if required, to the storage designated by the authorities."

Upon arrival at Inchon, the bales of woodpulp were placed in a barge furnished by a stevedoring company chosen by the carrier but paid for by the shipper, as provided in the contract. The barge collided with the pier at which it was to berth, resulting in wet damage to the woodpulp.

The special contract between the parties, immediately after the language above quoted provided: "All performance after ship's tackles to be at expense and risk of charterer and/or consignee and/or cargo-owner" (i. e. the plaintiff). The Bill of Lading also stated that the carrier's responsibility would cease when the cargo left the ship's side. The parties agree that unless these exculpatory provisions are null and void because in violation of Section 1 of the Harter Act, 46 U.S.C.A. § 190, the defendant must prevail in this action. Per contra, the parties apparently agree that if the exculpatory clauses are void, plaintiff must prevail.

Section 1 of the Harter Act provides: "It shall not be lawful for the . . . owner of any vessel transporting merchandise or property from or between ports of the United States and foreign ports to insert in any bill of lading or shipping document any clause, covenant, or agreement whereby it . . . shall be relieved from liability for loss or damage arising from negligence, fault, or failure in proper loading, stowage, custody, care, or proper delivery of any and all lawful merchandise or property committed to its . . . charge. Any and all words or clauses of such import inserted in bills of lading or shipping receipts shall be null and void and of no effect."

The crucial phrase "proper delivery" is not defined in the Act. It is defendant's position that where—as in the case at bar—either custom or physical necessity requires the use of barges to transport cargo from ship to shore, "proper delivery" is accomplished when the cargo is taken from the oceangoing ship and placed aboard a barge. Accordingly, defendant contends that the damage here occurred after "proper delivery", and therefore that the Harter Act does not prohibit the placing of liability for that damage upon the plaintiff shipper.

Two cases seem relevant to this contention: Isthmian Steamship Co. v. California Spray-Chem. Corp., (9th Cir. 1961, 1962) 290 F.2d 486, rehearing 300 F.2d 41, and Caterpillar Overseas, S.A. v. S.S. Expeditor (2d Cir. 1963) 318 F. 2d 720, cert. den. [1963] 375 U.S. 942, 84 S.Ct. 347, 11 L.Ed.2d 272.

■ As I read these cases, the essence of their teaching is: (1) presumptively "proper delivery" of cargo by a ship means at least safe delivery on a wharf;[1] and that (2) although the Harter Act does not outlaw a contract which clearly provides an alternative *place of delivery* (thus terminating the carrier's liability upon delivery to that place) it renders ineffective any attempt to limit liability by providing a specific *method* of delivery, and purporting to relieve the carrier of responsibility if that method be followed.

■ If that be a correct reading of these cases, plaintiff must prevail. The agreement between the parties plainly did not contemplate delivery of the cargo to a place other than the Inchon wharf, but plainly it did contemplate that the last leg of the journey to the Inchon wharf would be accomplished by means of lighterage. There is no indication that the mutual expectation that a barge would be engaged by the carrier to complete delivery meant that delivery was to be deemed complete after ship's tackles. In Isthmian Steamship, supra, the circumstance that no receipt was given to the carrier upon discharge of the cargo to the lighter was held to support the conclusion that the carrier's responsibility did not end at that point (300 F.2d at 44). Here, it is clear that the parties could never have contemplated that a stevedore selected by the carrier would have been authorized to give a receipt on behalf of the shipper or the consignee.

■ Insofar as the booking note agreement and the bill of lading purport to disavow carrier liability for damage occurring subsequent to discharge of cargo from the ocean going vessel, but prior to its delivery, they are null and void under the Harter Act.

The carrier accordingly must compensate the shipper for the damage done to the woodpulp.

Settle order on notice.

---

1. Defendant makes much of an apparent limitation on this doctrine to the effect that where port custom or necessity does not permit delivery to a wharf, "proper delivery" is not to be so defined. While this caveat does appear in *Isthmian Steamship, supra*, 290 F.2d at 488, it was not applied to the facts of that case which were virtually identical to those before me. Nor was it mentioned in the decision on rehearing, 300 F.2d 41. At any rate, such a caveat—even if recognized— would not obtain here for the reason that delivery per se to the Inchon wharf is not forbidden by custom or necessity, but only delivery by a deep-draft vessel.