**M.C. WATKINS, An underwriter at Lloyds' London, On Behalf of Himself and Those Other Lloyd's Underwriters Subscribing to Insurance Policy No. CN 98 5800, Contract No. NMC 1285, Plaintiff,**

v.

**M/V LONDON SENATOR, her engines, tackle, boilers, etc. in rem, Cho Yang Shipping Co., Ltd,**

**and**

**Ryan–Walsh Virginia, Inc., d/b/a Stevedoring Services of America, Defendants.**

Action No. 2:00CV207.

United States District Court, E.D. Virginia, Norfolk Division.

Sept. 6, 2000.

512

Nicole Elizabeth Ames, Wright, Constable & Skeen, L.L.P., Baltimore, MD, for M.C. Watkins, An Underwriter at Lloyds' London, On Behalf of Himself and Those Other Lloyd's Underwriters Subscribing to

Insurance Policy No. CN 98 5800, Contract No. NMC 1285.

Daniel Reid Warman, Baker and Warman, Norfolk, VA, for M/V London Senator, her engines, tackle, boilers, etc. in rem, Cho Yang Shipping Co., Ltd.

Henry Paul Bouffard, Vandeventer Black LLP, Norfolk, VA, Lawrence Gene Cohen, Vandeventer Black LLP, Norfolk, VA, for Ryan–Walsh Virginia, Inc. dba Stevedoring Services of America.

### OPINION & ORDER

MILLER, United States Magistrate Judge.

This matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c)(1) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia.

### I. PROCEDURAL BACKGROUND

In this admiralty case involving the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C.App. § 1300 et seq., M.C. Watkins, an underwriter at Lloyd's London, filed a Complaint alleging the defendants were negligent in handling a printing press, insured by Lloyd's London, which was shipped from La Spezia, Italy to Norfolk, Virginia. M.C. Watkins sued the M/V London Senator, a cargo vessel, in rem, Cho Yang Shipping Co., Ltd., a Korean carrier, and Ryan–Walsh Virginia, Inc., doing business as Stevedoring Services of America, a Virginia stevedoring corporation.

On August 15, 2000, the Court heard argument on the following motions: Cho Yang Shipping Co., Ltd. and M/V London Senator's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 4(m), Ryan–Walsh Virginia, Inc.'s Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), and M.C. Watkins' Motion for Partial Summary Judgment pursuant to Federal Rule of Civil

Procedure 56. M.C. Watkins ("Plaintiff") was represented by James Skeen, Esq. Daniel R. Warman, Esq. represented M/V London Senator and Cho Yang Shipping Co., Ltd. ("Cho Yang"). Henry P. Bouffard, Esq. represented Ryan–Walsh Virginia, Inc., doing business as Stevedoring Services of America ("SSA"). The Official Court Reporter was Diane Gray.

After a review of the memoranda submitted by the parties, and the applicable statutory and case law, the Court GRANTS Cho Yang and M/V London Senator's Motion to Dismiss, GRANTS SSA's Motion to Dismiss, and is without jurisdiction to rule on Plaintiff's Motion for Summary Judgment.

### II. FACTUAL BACKGROUND [1]

On or about October 14, 1998, Cho Yang undertook to ship a flatrack container which held two components of a Roland six color printing press ("Printing Press") from La Spezia, Italy to Norfolk, Virginia pursuant to Bill of Lading 210109033 ("Bill of Lading"). *See* Exhibit A to SSA's Motion to Dismiss; Plaintiff's Memorandum in Opposition to Defendant, SSA's Motion to Dismiss p. 1–2. The Printing Press was in good condition when it was received by Cho Yang at the port of loading. Complaint ¶ 6. The Printing Press was conveyed to Norfolk, Virginia aboard the vessel M/V London Senator and arrived on or about October 29, 1998 in good condition. Complaint ¶¶ 5, 12.

Pursuant to a contract entered into by Cho Yang and SSA, SSA was performing stevedoring services on behalf of Cho Yang at the port of Norfolk, Virginia. *See* Exhibit B to SSA's Motion to Dismiss. SSA unloaded the Printing Press, in its flatrack container, from the M/V London Senator and placed it onto a chassis. *See* Plaintiff's Opposition to SSA's Motion to Dismiss p. 2. SSA then transported the chassis and flatrack container to a shed at the pier.

---

1. The facts discussed in this section were either pled in the Complaint or addressed in Plaintiff's briefs, and will be accepted as true for purposes of these motions.

While maneuvering the chassis and fla-track container into a slot in the shed, the flatrack container overturned causing damage to the Printing Press.

At the time the Printing Press was received by the inland carrier in Norfolk, Virginia for delivery to the consignee, Carter Composition Corporation, it had been damaged in the amount of $425,000. Complaint ¶¶ 6, 13. Plaintiff is an underwriter at Lloyd's London which insured the Printing Press. Complaint ¶ 2. Lloyd's London has paid Carter Composition Corporation for all losses and damages to the Printing Press, and brought this action as the subrogee of Carter Composition Corporation. Complaint ¶ 2.

### III. MOTION TO DISMISS M/V LONDON SENATOR

Plaintiff has attempted to sue the M/V London Senator in rem. The M/V London Senator was not arrested or served within 120 days of the filing of the Complaint, October 29, 1999, as required by Federal Rule of Civil Procedure 4(m). On August 15, 2000, counsel for the Plaintiff explained the M/V London Senator had not traveled within the jurisdiction of this court since the Complaint was filed. Further, counsel had no information to indicate the vessel would travel within the jurisdiction of this Court prior to the trial date of December 12, 2000. Therefore, the Motion to Dismiss the M/V London Senator is GRANTED without prejudice.

### IV. MOTION TO DISMISS UNDER RULE 12(b)(1)

#### A. Standard of Review

When confronted with a challenge to subject matter jurisdiction presented in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the court should consider "whether plaintiff's allegations, standing alone and taken as true [plead] jurisdiction and a meritorious cause of action." *Dickey v. Greene*, 729 F.2d 957, 958 (4th Cir.1984) (*citing George v. Kay*, 632 F.2d 1103 (4th Cir.1980), *cert.*

*denied*, 450 U.S. 1029, 101 S.Ct. 1738, 68 L.Ed.2d 224 (1981)). Once the existence of subject matter jurisdiction is challenged, the burden of establishing its existence always rests upon the party asserting jurisdiction. *See* 2A *Moore's Federal Practice* § 12.07 (1993). However, "the court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction to hear the action." *Id.*

With these controlling principles in mind, the Court turns to the merits of the Motions to Dismiss for Lack of Subject Matter Jurisdiction.

#### B. Applicable Law

The parties agree the Bill of Lading will be construed according to federal law. *See Wemhoener Pressen v. Ceres Marine Terminals, Inc.*, 5 F.3d 734, 738–41 (4th Cir. 1993). The Bill of Lading for the Printing Press, which was issued in international trade, is governed by COGSA. 46 U.S.C.App. § 1300. COGSA applies from the time the Printing Press was loaded onto the M/V London Senator until it was discharged from the vessel. 46 U.S.C.App. § 1301(e). While COGSA has superseded much of the Harter Act, § 12 of COGSA provides the Harter Act will continue to govern Cho Yang's duties prior to the time the Printing Press was loaded onto the vessel and following its discharge from the vessel. 46 U.S.C.App. § 1312; 46 U.S.C.App. §§ 190–96; *see also Wemhoener Pressen v. Ceres Marine Terminals, Inc.*, 5 F.3d at 738–39. The Bill of Lading continues to govern the rights and obligations of the parties until proper delivery of the Printing Press to Carter Composition Corporation. *Id.*

#### C. Motion to Dismiss Cho Yang

Cho Yang asserts the forum selection and choice of law clause contained in the Bill of Lading should be enforced and the case dismissed for lack of subject matter jurisdiction. The relevant clause states, "[t]he contract evidenced in this Bill of

Lading is governed by the law of Korea and any claim or dispute arising hereunder or in connection herewith shall be determined by the courts in Seoul and no other courts."

### 1. The Supreme Court's Decision in *Sky Reefer*

■ Forum selection clauses are presumed valid unless the party opposing enforcement can show enforcement would contravene a strong public policy. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10–15, 92 S.Ct. 1907, 1913–15, 32 L.Ed.2d 513 (1972). In 1995, the United States Supreme Court enforced a bill of lading's foreign arbitration clause, and effectively overruled a line of Circuit Court decisions invalidating forum selection clauses in COGSA cases.[2] *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995). In *Sky Reefer*, a New York fruit distributor whose produce was damaged in transit from Morocco to Massachusetts sued the Panamanian vessel and Japanese carrier in a federal court in Massachusetts. *Id.* 515 U.S. at 528, 115 S.Ct. at 2323. The foreign arbitration clause in the bill of lading stated the contract would be governed by Japanese law, and any dispute arising from the bill of lading must be referred to arbitration in Tokyo. *Id.* 515 U.S. at 530, 115 S.Ct. at 2324. The distributor argued against enforcement of the foreign arbitration clause on two grounds: 1) the clause lessened COGSA liability by increasing the transaction costs of obtaining relief and therefore was null and void under COGSA § 3(8) [3]; and 2) there was no guarantee foreign arbitrators would ap-

ply COGSA in their resolution of the dispute. *Id.* 515 U.S. at 533, 115 S.Ct. at 2326.

The Court rejected the first ground, holding COGSA defines certain duties and obligations of the carrier, but does not prevent the parties from agreeing to enforce these obligations in a particular forum. *Id.* 515 U.S. at 535, 115 S.Ct. at 2327. The decision draws a distinction between COGSA's substantive statutory guarantees and the procedure for enforcing them. *Id.* 515 U.S. at 534, 115 S.Ct. at 2327. The Court notes none of the sixty-six countries which have enacted the Hague Rules, on which COGSA was modeled, has interpreted the equivalent of § 3(8) to prohibit foreign forum selection clauses. *Id.* 515 U.S. at 536, 115 S.Ct. at 2328. The Court concluded the "contemporary principles of international comity and commercial practice" require United States courts to strive to give effect to foreign forum resolution clauses to avoid disparaging the competence of other forums and to promote order and predictability. *Id.*

Addressing the distributor's second argument for not enforcing the arbitration clause, the Court held that concern over what law the arbitrators would apply was premature. *Id.* 515 U.S. at 540, 115 S.Ct. at 2329. The Court recognized the relevant issue is whether the law applied by the arbitrator will reduce the carrier's obligations to the cargo owner below those imposed by COGSA. *Id.* 515 U.S. at 539, 115 S.Ct. at 2329. The district court retained jurisdiction to review the arbitrator's decision. *Id.* 515 U.S. at 541, 115 S.Ct. at 2330. Therefore, the lower court was correct to reserve judgment on the choice

---

2. At least one court has disagreed that the decision in *Sky Reefer* upholding a foreign *arbitration* clause overruled the line of circuit court cases invalidating foreign *forum selection* clauses. *See Union Steel America Co. v. M/V Sanko Spruce*, 14 F.Supp.2d 682, 689–91 (D.N.J.1998). Whether the circuit court cases were overruled or merely discredited, courts have consistently applied *Sky Reefer* in upholding foreign forum selection clauses as will be discussed in more detail in the next section.

3. "Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect." 46 U.S.C.App. § 1303(8).

of law question based on the mere speculation Japanese law, which could lessen the carrier's liability, would be applied. *Id.*

## 2. Application of *Sky Reefer* to Forum Selection Clauses

Following the Supreme Court's *Sky Reefer* decision upholding a foreign arbitration clause, several courts, including this Court, have extended the holding to foreign forum selection clauses. *See Mitsui & Co. (USA), Inc. v. Mira M/V,* 111 F.3d 33, 36 (5th Cir.1997); *Fireman's Fund Ins. Co. v. M.V. DSR Atlantic,* 131 F.3d 1336, 1339 (9th Cir.1997), *cert. denied,* 525 U.S. 921, 119 S.Ct. 275, 142 L.Ed.2d 227 (1998); *Talatala v. Nippon Yusen Kaisha Corp.,* 974 F.Supp. 1321, 1324 n. 4 (D.Haw.1997); *Tradearbed v. M/V Agia Sofia,* 1997 A.M.C. 2838, 2843, 1997 WL 769525 (D.N.J.1997), *Pasztory v. Croatia Line,* 918 F.Supp. 961 (E.D.Va.1996); *Nippon Fire & Marine Ins. Co. v. M.V. Egasco Star,* 899 F.Supp. 164, 170 n. 8 (S.D.N.Y. 1995), *aff'd,* 104 F.3d 351 (2nd Cir.1996) (table). These courts rely on: 1) the reasoning and language of the *Sky Reefer* opinion which do not limit the holding to foreign arbitration clauses; and 2) the concurring and dissenting opinions which recognize the holding will apply to forum selection clauses. For these reasons, the Court will apply *Sky Reefer* to this case. Therefore, the burden is on the Plaintiff to show the substantive law of Korea will reduce Cho Yang's obligations below what COGSA guarantees. *Sky Reefer,* 515 U.S. at 539, 115 S.Ct. 2322.

## 3. Applying the Substantive Law of Korea

■ Plaintiff argues the substantive law of Korea does reduce Cho Yang's obligations below what COGSA guarantees because it does not provide for an in rem proceeding against the vessel. *See* Plaintiff's Memorandum in Opposition to Cho-Yang's Motion to Dismiss p. 5. Since the Plaintiff did not arrest or serve the M/V London Senator within 120 days of filing the Complaint, the in rem action is no longer a component of this case. Plaintiff

fails to discuss any additional carrier obligations required by COGSA which are not provided by Korean law. In fact, several courts have held Korean law would provide the shipper with the same protections as or greater protection than COGSA guarantees. *See Fireman's Fund Ins. Co. v. M.V. DSR Atlantic,* 131 F.3d at 1339–40; *Tradearbed v. M/V Agia Sofia,* 1997 A.M.C. at 2838, 1997 WL 769525 at *3; *Union Steel America Co. v. M/V Sanko Spruce, et al.,* 14 F.Supp.2d 682, 692–95 (D.N.J.1998). Based on the analysis of Korean law undertaken in the above opinions, this Court finds the substantive law of Korea will not reduce the carrier's obligations to the cargo owner below what COGSA guarantees.

The remainder of Plaintiff's arguments against enforcement of the forum selection clause are based on the assertion that even if the clause is enforced, and the case against Cho Yang is dismissed here in favor of litigation in Korea, the case against SSA will continue in this Court. Plaintiff states the expense of litigating the case twice, the waste of judicial resources and the opportunity for inconsistent results all weigh against enforcing the forum selection clause. *See Russell v. City Ice and Fuel Company of Point Pleasant,* 539 F.2d 1318 (4th Cir.1976). Therefore, the Court will next address whether the clause also applies to SSA under the Bill of Lading.

## D. *Motion to Dismiss SSA*

SSA asserts it is entitled to the benefit of the forum selection clause pursuant to the language in the Bill of Lading. Thus, SSA requests that Plaintiff's claim against it be dismissed for lack of subject matter jurisdiction.

### 1. The Himalaya Clause

In particular, SSA relies on the language in the following clause, referred to as the "Himalaya Clause":

5. **CERTAIN RIGHTS AND IMMUNITIES FOR THE CARRIER AND OTHER PERSONS (Himalaya Clause)**

(1) The Carrier [4] shall be entitled to subcontract on any terms, the whole or any part of the Carriage.

(2) The Merchant undertakes that no claim or allegation shall be made against any person or vessel whatsoever, other than the *Carrier, including, but not limited to the Carrier's servants or agents, any independent contractor and his servants or agents, and all others by whom the whole or any part of the Carriage, whether directly or indirectly, is procured, performed or undertaken,* which imposes or attempts to impose upon any such person or vessel any liability whatsoever in connection with the Goods or the Carriage, and if any claim or allegation should nevertheless be made to defend, indemnify and hold harmless the Carrier against all consequences thereof. Without prejudice to the foregoing *every such person and vessel shall have the benefit of all provisions herein benefiting the Carrier as if such provisions were expressly for his benefit* and in entering into this contract the Carrier, to the extent of these provisions, does so not only on his own behalf but also as agent or trustee for such persons and vessels and such persons and vessels shall to this extent be or be deemed to be parties to this contract.

*See* Exhibit A to SSA's Motion to Dismiss (emphasis added).

The court must first determine whether SSA, the stevedore, was intended to be covered by this clause. Himalaya

4. The Bill of Lading contains the following definitions:
"Carrier" means the Cho Yang Shipping Co. Ltd. as being the Carrier and on whose benefit this Bill of Lading has been signed. "Merchant" includes the shipper, the consignee, the receiver of the Goods. The holder of this Bill of Lading, any person owning or entitled to the possession of the Goods or

clauses which extend the protections and defenses of COGSA to a carrier's agents must be "strictly construed and limited to intended beneficiaries." *Robert C. Herd & Co. v. Krawill Machinery Corp.,* 359 U.S. 297, 305, 79 S.Ct. 766, 771, 3 L.Ed.2d 820 (1959). However, the term "stevedore" does not need to appear in the bill of lading, and courts have held using terms such as "agents" and "subcontractors" is sufficient to include anyone engaged by the carrier to perform the duties of the carrier under the carriage contract. *Wemhoener Pressen v. Ceres Marine Terminals, Inc.,* 5 F.3d at 742–43; *Certain Underwriters at Lloyds' v. Barber Blue Sea Line,* 675 F.2d 266, 269–70 (11th Cir.1982). This Himalaya Clause expressly extends Cho Yang's benefits to any agents, servants or independent contractors performing "any part of the Carriage." Therefore, SSA was covered by the Himalaya Clause as long as it was performing part of the Carriage.

### 2. "Carriage" as Defined in the Bill of Lading

The Court must next determine whether the transportation of the Printing Press from the vessel to a shed at the pier constitutes part of the Carriage. Carriage is defined in the Bill of Lading as, "the whole of the operations and services undertaken or performed by or on behalf of the Carrier in respect of the Goods." The first section of the Bill of Lading addresses the scope of Cho Yang's responsibilities under the contract:

"Combined Transport" arises where the Carriage called for by this Bill of Lading is not Port to Port.

this Bill of Lading[,] any person having a present or future interest in the Goods or any person acting on behalf of any of the above mentioned persons.
"Carriage" means the whole of the operations and services undertaken or performed by or on behalf of the Carrier in respect of the Goods.

"Port to Port Shipment" arises where the Place of Receipt and the Place of Delivery are not indicated on the front of this Bill of Lading or if both the Place of Receipt and the Place of Delivery indicated are ports and the Bill of Lading does not in the nomination of the Place of Receipt or the Place of Delivery on the front here of specify any place or spot within the area of the port so nominated.

Both the Place of Receipt and Place of Delivery sections in the Bill of Lading were left blank. Therefore, it appears the parties intended for the carriage to be port to port.

Port to port shipment is further discussed in section six of the Bill of Lading:

**6. (2) PORT TO PORT SHIPMENT**

The responsibility of the Carrier is limited to that part of the Carriage from and during loading on to the vessel up to and during discharge from the vessel and the Carrier shall not be liable for any loss or damage whatsoever in respect of the Goods or for any other matter arising during any other part of the carriage even though Charges for the whole Carriage have been charged by the Carrier. The Merchant constitutes the Carrier as agent to enter into contracts on behalf of the Merchant with others for transport, storage, handling or any other services in respect of the Goods prior to loading and subsequent to discharge of the Goods from the vessel without responsibility for any act or omission whatsoever on the part of the Carrier or others and the Carrier may as such agent enter into contracts with others on any terms whatsoever including terms less favorable than the terms in this Bill of Lading.

This language in the Bill of Lading appears to relieve Cho Yang from responsibility for the Printing Press following discharge from the vessel. This is the basis of Plaintiff's argument that SSA's placing the Printing Press in the shed was not part of the Carriage because it occurred after discharge from the vessel.

### 3. Application of the Harter Act to the Bill of Lading

The Harter Act, which governs bills of lading following discharge of the goods from the vessel, prohibits such a limitation of the carrier's liability. 46 U.S.C.App. §§ 190–96. The Act requires carriers to make "proper delivery" of their cargo.

It shall not be lawful for [a carrier] to insert in any bill of lading or shipping document any clause, covenant, or agreement whereby it, he, or they shall be relieved from liability for loss or damage arising from negligence, fault, or failure in proper loading, stowage, custody, care or proper delivery of any and all lawful merchandise or property committed to its or their charge. Any and all words or clauses of such import inserted in bills of lading or shipping receipts shall be null and void and of no effect.

46 U.S.C.App. § 190. "Proper delivery" is not defined in the statute, but has been interpreted by courts to require:

either actual or constructive delivery. Actual delivery consists [of] completely transferring the possession and control of the goods from the vessel to the consignee or his agent. Constructive delivery occurs where the goods are discharged from the ship upon a fit wharf and the consignee receives due and reasonable notice that the goods have been discharged and has a reasonable opportunity to remove the goods or put them under proper care and custody.

*Wemhoener Pressen v. Ceres Marine Terminals, Inc.*, 5 F.3d at 742, (citing *B. Elliott Ltd. v. John T. Clark & Son*, 704 F.2d 1305, 1308 (4th Cir.1983)).

Courts have refused to enforce bill of lading clauses which attempt to limit the carrier's responsibility to the time of discharge. In *F.J. Walker, Ltd. v. Motor Vessel "Lemoncore"*, 561 F.2d 1138, 1140 (5th Cir.1977), part of a shipment of meat

thawed following discharge from the vessel onto an unrefrigerated section of the dock. The carrier had contracted with a stevedore to perform the unloading and limited cold storage services. *Id.* The bill of lading provided the carrier would not be responsible for loss, even if caused by the carrier's own negligence, following discharge of the goods from the vessel. *Id.* at 1143. The court held proper delivery requires " 'that the cargo be placed upon a fit wharf at the port of destination,' and not merely that discharge from the vessel occur." *Id.* (citing, *Levatino Co. v. American President Lines, Ltd.*, 337 F.2d 729 (2nd Cir.1964)). To the extent the bill of lading attempted to relieve the carrier from liability following discharge and prior to the time proper delivery was made, it was invalid. *Id.* The stevedore had assumed the carrier's obligations following discharge from the vessel, and to the extent these obligations were breached prior to deliver of the meat, the carrier was liable. *Id.* at 1146. The Court held proper delivery was not made and the carrier was liable under the Harter Act to compensate the consignee for damages. *Id.*

Similarly, in *Central Trading Corp. v. M.V. Dong Myung*, 361 F.Supp. 302, 303 (S.D.N.Y.1973), the parties entered into an agreement which stated, "[a]ll performance after ship's tackles to be at expense and risk of charterer and/or consignee and/or cargo-owner." The bill of lading also contained a provision that the carrier's responsibility would cease when the cargo left the ship's side. *Id.* The court held, "[i]nsofar as the booking note agreement and the bill of lading purport to disavow carrier liability for damage occurring sub-

sequent to discharge of cargo from the ocean going vessel, but prior to its delivery, they are null and void under the Harter Act." *Id.* at 304. The carrier was responsible for damage to the goods after they had been placed on a barge furnished by the stevedore, which was chosen by the carrier and paid for by the shipper. *Id.* at 303. *See also Isthmian S.S. Co. v. California Spray–Chemical Corp.*, 300 F.2d 41, 47–48 (9th Cir.1962) (holding language in a bill of lading which relieved the carrier from liability during lighterage violated the Harter Act).

■ To the extent the Bill of Lading attempts to relieve Cho Yang of the responsibility to properly deliver the Printing Press, it is null and void.[5] As in the *F.J. Walker* case, SSA contracted with Cho Yang to unload the Printing Press and place it into storage pending delivery to the consignee. It is presumed the damage to the Printing Press occurred when SSA attempted to place the Printing Press into the storage shed and the flatrack container overturned. This took place prior to either actual or constructive delivery of the Printing Press to Carter Composition Corporation. Therefore, Cho Yang is liable under the Harter Act for the damage.

### 4. Assignment of Benefits to SSA

Plaintiff argues the intent of the parties, when they entered into the Bill of Lading, was to deny any independent contractor handling goods after discharge from the vessel the benefits afforded Cho Yang. Plaintiff points to the language contained in the Himalaya Clause (extending the benefits of Cho Yang to third parties per-

---

**5.** The Bill of Lading contemplated that the Harter Act may apply, and incorporated the following provision, "[i]f and to the extent that the provisions of the Harter Act of the United States of America 1893 would otherwise be compulsorily applicable to regulate the Carrier's responsibility for the Goods during any period prior to loading on or after discharge from the vessel the Carrier's responsibility shall instead be determined by the provisions of 6(3) below, but if such provi-

sions are found to be invalid such responsibility shall be subject to COGSA."

COGSA permits parties to extend its applicability to periods prior to loading or subsequent to discharge. 46 U.S.C.App. § 1307. When this is done, the terms of COGSA are interpreted as terms of the contract, and apply as long as they are not inconsistent with the Harter Act. *See Wemhoener Pressen v. Ceres Marine Terminals, Inc.*, 5 F.3d at 739.

forming part of the Carriage) when read in conjunction with the restrictions imposed by the Port to Port Shipment Clause (relieving Cho Yang from liability following discharge). The Port to Port Shipment Clause is null and void under the Harter Act, and cannot limit Cho Yang's responsibility prior to proper delivery. The parties anticipated the Harter Act may apply to the Bill of Lading, and discussed the effect of the Harter Act in the Clause Paramount. *See* Bill of Lading 6.(1)(A). Fully anticipating that the Harter Act may invalidate the Port to Port Shipment restriction, the parties extended the benefits of Cho Yang to any independent contractors performing "any part of the Carriage," meaning "the whole of the operations and services undertaken or performed by or on behalf of the Carrier in respect of the Goods." Cho Yang was responsible for the goods until proper delivery under the Harter Act. Therefore, the Himalaya Clause extends the benefits of Cho Yang to SSA, an independent contractor performing part of the Carriage on behalf of Cho Yang.

 Plaintiff further asserts the forum selection clause in the Bill of Lading, requiring claims to be brought in Korea, is not a "benefit" to SSA, a Virginia corporation with its principal place of business in Virginia. It is well settled that the scope of a third-party beneficiary's rights is defined by the contract. 4 *Corbin on Contracts* § 819, p. 277 (1951). The Bill of Lading states, "[t]he contract evidenced by or contained in this Bill of Lading is governed by the law of Korea and *any claim or dispute arising hereunder* or in connection herewith shall be determined by the courts in Seoul and no other courts" (emphasis added). The language of the forum selection clause does not limit its application to claims between the parties signing the agreement. It is not necessary for SSA to have participated in the negotiation of the forum selection clause or to have signed the contract for the forum selection clause to be enforced. *See TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.,*

915 F.2d 1351, 1354 (9th Cir.1990). SSA is not opposed to enforcing the forum selection clause, the clause is binding on the Plaintiff, and the clause is a "benefit" contained in the contract to which SSA is a third party beneficiary. Consequently, the forum selection clause applies to SSA. The proper forum for this dispute is in Seoul, Korea. Therefore, the Motion to Dismiss Cho Yang and the Motion to Dismiss SSA for lack of subject matter jurisdiction are GRANTED.

## V. *MOTION FOR PARTIAL SUMMARY JUDGMENT*

Plaintiff asserts the Himalaya Clause does not extend the benefit of the package limitation contained in the Bill of Lading to SSA, and relies on the same arguments as made in response to SSA's Motion to Dismiss based on the foreign forum selection clause. This Court lacks subject matter jurisdiction to rule on the motion.

## VI. *ORDER*

For the foregoing reasons, the Court orders Cho Yang and the M/V London Senator's Motion to Dismiss is hereby GRANTED, and SSA's Motion to Dismiss is hereby GRANTED. The Court is without jurisdiction to rule on Plaintiff's Motion for Summary Judgment.

The Clerk shall mail a copy of this Opinion and Order to all counsel of record.